473 P.2d 363

Joseph M. MONTOYA, Plaintiff-Appellee,

v.

Lucy BARRERAS et al., Defendants-Appellants.

No. 8990.

Supreme Court of New Mexico.

Aug. 10, 1970.

Solomon, Stillinger & Lunt, Santa Fe, for appellants.

Standley, Witt & Quinn, Santa Fe, Frank P. Dickson, Jr., Albuquerque, for appellee.

## OPINION

SISK, Justice.

Twenty of the defendants in a quiet-title action appeal from that portion of the final

decree which relieved and excluded from the burden of residential restrictions and covenants one lot owned by plaintiff in a subdivision in Santa Fe, New Mexico in which these defendants also owned lots.

Defendants rely on three points, but because we hold that the second point is controlling and requires reversal the other points need not be discussed. Point II reads as follows:

> "The 'Declaration of Protective Covenants to the Linda Vista Addition of the City of Santa Fe' does not permit the removal of restrictions on only one lot in the subdivision while retaining the restrictions on all other lots in the subdivision, and therefore, the trial court erred in overruling appellants' legal defense 1(E)."

Legal defense 1(E), as it appears in the amended answer of defendants, reads:

> "The Covenant (X) does not permit the relinquishment of the restrictions on only one lot or one portion of the subdivision while retaining the restrictions on other lots in the subdivision."

In 1940, the owner of a tract of land in Santa Fe, New Mexico, whom we will refer to as the grantor, executed and recorded an instrument titled "Declaration of Protective Covenants for the Linda Vista Addition to the City of Santa Fe, New Mexico," which declared that *all* of the described tract was encumbered by and subject to twelve paragraphs of restrictions. Paragraph (X) of the restrictive covenants, which contains the language directly in dispute, provides:

> "These covenants are to run with the land and shall be binding on all the parties and all persons claiming under them until January 1, 1966, at which time said covenants shall be automatically extended for successive periods of ten (10) years unless by a vote of the majority of the then owners of the lots it is agreed to change the said covenants in whole or in part."

All of the evidence before the trial court was documentary. No plat of the addition is included in the transcript. The parties executed a Stipulation Agreement in which they agreed that during December, 1967, and January and February, 1968, a majority of the owners of lots within the residential subdivision had signed a "Consent to Change of Protective Covenants" pertaining to the plaintiff's lot, by which they voted for and consented to the removal of all of the restrictions from that one lot and to its use for commercial purposes.

Plaintiff contends that such removal of the residential restrictions from one lot only was proper because the language of paragraph (X) is ambiguous and must be construed strictly against the grantor and in favor of free use of the land. By such construction they argue that the phrase "* * * change the said covenants in whole or in part" in paragraph (X) is not limited to changing the residential covenants themselves as they affect all of the lots, but permits the complete removal of the covenants from one lot while retaining them on all other lots.

The plaintiff's authorities recite the long-established rules that, if ambiguous, a restriction on property must be construed against its grantor and in favor of free use. But alleging that a restriction is ambiguous does not necessarily make it so. These general rules can have significance only as applied to the particular facts of the individual case. Restrictive covenants must be considered reasonably, though strictly, and an illogical, unnatural, or strained construction must be avoided. H. J. Griffith Realty Co. v. Hobbs Houses, Inc., 68 N.M. 25, 357 P.2d 677 (1960). In the Griffith case this court noted that in construing restrictive covenants, perhaps more than in any other field of law, each case must depend on its own particular facts, and an attempt to apply general rules is unsatisfactory.

The issue to be determined is therefore whether, considering the declaration of restrictive covenants as a whole, paragraph (X) can be reasonably and logically con-

strued to permit the residential restrictions to be removed on one lot only, or on a lot-by-lot basis, by a majority of the owners in the subdivision. We do not believe that it can.

■ Before applying the general rule that restrictive covenants should be construed in favor of the free use of property, the court must recognize that " * * * effect is to be given to the intention of the parties as shown by the language of the whole instrument, considered with the circumstances surrounding the transaction, and the object of the parties in making the restrictions." Hoover v. Waggoman, 52 N.M. 371, 199 P.2d 991 (1948). See also Suttle v. Bailey, 68 N.M. 283, 361 P.2d 325 (1961); Rowe v. May, 44 N.M. 264, 101 P.2d 391 (1940).

Considering the entire document, by clear statement and with plain intent, it constitutes a detailed plan for residential development and restriction as to all of the lots in the subdivision. Under the facts and circumstances of this case, we are not faced with the resolution of an ambiguous restriction.

■ Examination of the entire declaration reveals that the original restrictions were clearly imposed on all of the described property. The declaration describes the property and is then followed by the granting clause which declares that all of the property shall be encumbered by the restrictions. Following this granting clause, twelve paragraphs of restrictive covenants are listed, including the provision in covenant (X) that they may be changed in whole or in part. The phrase "in whole or in part" in covenant (X) clearly modifies the words "to change," and the direct object of "to change" is the word "covenants," not the word "lots." Thus, the covenants may be changed in whole or in part, but we cannot construe this language as permitting any such change or changes to apply to only a portion of the lots on which the restrictions were imposed. Nor is there anything in the covenants themselves which can be construed as either expressly or impliedly modifying or changing the granting clause itself, which expresses the intent and purpose that all of the described property is encumbered by the restrictions, whether they remain as originally stated or are subsequently changed in whole or in part. The original restrictions were clearly imposed on all of the described property, and though the restrictions themselves may be changed in whole or in part, the change or changes which might be made must affect all of the described property.

■ Historically, restrictive covenants have been used to assure uniformity of development and use of a residential area to give the owners of lots within such an area some degree of environmental stability. To permit individual lots within an area to be relieved of the burden of such covenants, in the absence of a clear expression in the instrument so providing, would destroy the right to rely on restrictive covenants which has traditionally been upheld by our law of real property. As in Gorman v. Boehning, 55 N.M. 306, 232 P.2d 701, 26 A.L.R.2d 868 (1951), the declaration of the grantor in this case contemplates a plan of development limited to residential purposes. To completely insure a plan of residential development, the grantor must impose reciprocal restrictive covenants on the property for the common benefit of all of his grantees and their assigns. Margate Park Protective Ass'n v. Abate, 22 N.J.Super. 550, 92 A.2d 110 (1952). See also Cree Meadows, Inc. v. Palmer, 68 N.M. 479, 362 P.2d 1007 (1961); Benbow v. Boney, 240 S.W.2d 438 (Tex.Civ.App.1951).

■■ All of the lots in the subdivision were sold subject to the provisions of the declaration. Restrictions as to the use of land are mutual, reciprocal, equitable easements in the nature of servitudes in favor of owners of other lots within the restricted area, and constitute property rights which run with the land. McFarland v. Hanley, 258 S.W.2d 3 (Ky.1953). Where the covenants manifest a general plan of restriction to residential purposes, such cove-

nants constitute valuable property rights of the owners of all lots in the tract. Gorman v. Boehning, supra.

■ In Riley v. Boyle, 6 Ariz.App. 523, 434 P.2d 525 (1967), one landowner in a residential subdivision sued to enjoin another from violating two restrictive covenants pertaining to construction requirements. Another restriction provided that:

" 'The owner or owners of 51% of the lots in this subdivision shall have the right to amend or change these conditions, reservations and restrictions for the beneficial improvement and interest of WESTRIDGE ESTATES.' "

At least 51% of the owners had signed an amendment which included a provision that one lot was excluded from the effect of two of the restrictions. It was contended that the removal of those restrictions from one lot only was invalid. The court said:

"Only one case dealing with the precise question herein involved has been cited to the court. That is the case of Cowherd Development Company v. Littick, 361 Mo. 1001, 238 S.W.2d 346 (1951). It held that a majority of the owners of the lots could exercise the power of extending the restrictions for an additional period of 25 years either as to all of the lots or as to none of the lots but could not keep the restrictions in force as to some lots but not as to others.

"The comment is made in the notes of 4 A.L.R.3d 582:

" 'It would appear that any action taken by property owners to alter, extend, or revoke existing restrictions must apply to all of the properties which are subject to them. In one case the court held invalid an attempt to retain restrictions as to part of a subdivision while releasing them as to another part.'

"This court is satisfied that this is a sound principle. It is to be noted that in the subdivision in question in this case there was no attempt at zoning or imposing one set of restrictions on a part of the subdivision and another set on another part.

"Paragraph 19 of the restrictions, as stated above, gives the power to 51 per cent of the lot owners to change completely the restrictions applicable to the entire subdivision but it does *not* give the power to change the restrictions as to one or more but less than all the lots. The restrictions imposed pertain to *all* lots in the subdivision and a fair construction of the words permitting amendments indicate that the power to amend is only as to restrictions for all lots in the subdivision.

"Taking these words to mean that particular lots could be excepted permits the obviously unintended result that 51 per cent of the owners could exempt their own property and leave the other 49 per cent encumbered or could even impose more strict restrictions upon certain lots. Certainly such an interpretation could easily result in a patchwork quilt of different restrictions according to the views of various groups of 51 per cent and completely upset the orderly plan of the subdivision."

The court then held that each owner had the contractual right to have the restrictions enforced against all of the lots unless the partial change in the restrictions voted by 51 per cent of the owners was made equally applicable to all lots in the subdivision and that the attempted exemption of one lot was null and void. Both our case and the Riley case, supra, deal directly with the partial changing or amending of restrictive covenants, and we agree with the Arizona court that absolution from the restrictions as to only some, but not all, of the lots is not a valid construction where the language of the instrument manifests the intent for orderly residential neighborhood development. In Cowherd Development Company v. Littick, 361 Mo. 1001, 238 S.W.2d 346 (1951), in holding that the extension of the restrictions could not apply to part of the lots and not others, the court noted that one of the primary pur-

poses of residential restrictions in a subdivision is to assure purchasers of lots that they may build homes without fear of commercial expansion or encroachment.

The soundness of the reasoning in Riley v. Boyle, supra, is evidenced when the results of the interpretation plaintiff would place on paragraph (X) of the restrictions are considered. Plaintiff's interpretation would permit the majority of owners to remove all restrictions from their lots while leaving the burden on the lots of the minority. It would permit the majority of owners, whose lots might not be adversely affected because of their insulated location in the subdivision, to authorize offensive consequences for the minority by removing or imposing restrictions only on certain lots within the area. Because the grantor encumbered all of the property with restrictions, we cannot infer from the declaration the intention that any subsequent change or changes in the restrictions could be made applicable to only one lot or a portion of the lots in the residential subdivision.

Our holding that the declaration does not permit the majority of owners to exempt one lot only from the residential restrictions, contrary to the vested rights of the minority of owners, does not necessarily mean that the plaintiff was or is without a remedy. This court has long recognized that individual lots in a subdivision may be relieved of restrictive covenants if there has been such a change in the conditions which existed when the covenants were imposed as to defeat the intended objects and purposes of the covenants and their enforcement is no longer necessary to afford the protection originally contemplated. Williams v. Butler, 76 N.M. 782, 418 P.2d 856 (1966); Mershon v. Neff, 67 N.M. 311, 355 P.2d 128 (1960); Chuba v. Glasgow, 61 N.M. 302, 299 P.2d 774 (1956). See also the majority opinion and the dissent in Mason v. Farmer, 80 N.M. 354, 456 P.2d 187 (1969). In the present case, however, no allegation of change of conditions was raised by the pleadings nor was any finding concerning change of conditions requested or made.

To the extent that it relieves and excludes the plaintiff's lot from the operation and effect of the restrictive covenants, the decree is reversed with directions to enter a new decree consistent with this opinion.

It is so ordered.

COMPTON, C. J., and TACKETT, J., concur.