699 P.2d 1075

Leslie CUNNINGHAM, John Cunningham, Alan R. Rackstraw, Marcia Y. Rackstraw, Shannon Deacon, Robb Deacon, Errol Seitz, Karl J. Seitz, David C. Wernicke, Donna L. Wernicke and Hugh S. McLeod, Plaintiffs-Appellants,

v.

Melvin GROSS and Pearl F. Gross, Defendants-Appellees.

No. 15458.

Supreme Court of New Mexico.

May 17, 1985.

Delayo & Olson, Michael Allison, Albuquerque, for plaintiffs-appellants.

Wycliffe V. Butler, Albuquerque, for defendants-appellees.

## OPINION

W. JOHN BRENNAN, District Judge.*

Plaintiffs originally brought an action for declaratory and injunctive relief to enforce protective covenants in the form of building height restrictions. Defendants responded with a motion for summary judgment asserting that the restrictive covenants were not violated. The district court granted summary judgment on grounds that any alleged covenant violation was *de minimis*. Plaintiffs appeal.

The sole question presented is whether the district court properly exercised its eq-

* Sitting by designation of the Chief Justice.

uity powers in granting summary judgment.

Plaintiffs are lot owners in the Ranchos de Placitas residential subdivision in Sandoval County. Through their lawsuit they sought to prevent defendants from constructing a residence in violation of a building height restriction applicable to the structure. The protective covenant central to this dispute is set forth in paragraph 9 of a document outlining covenants applicable to various lots within the subdivision. The covenant provides in part that "[t]he maximum building height shall be 17 feet, exclusive of chimneys * * *." Paragraph 1 of the same document specifically provides that all restrictive subdivision covenants are to run with the land.

The facts of the case were in dispute in three crucial areas, the first concerning the actual height of the structure. Defendants' motion for summary judgment was supported by affidavits which indicated that the residence was 16.7 feet high and was otherwise in compliance with the restrictive covenant. Plaintiffs' motion in opposition to summary judgment was supported by· affidavits indicating the residence was built to a height of 22.68 feet. Both of these surveys were made within two months of the time plaintiffs' suit was filed. Other measurements taken before construction began and again after completion of the residence indicated a height of approximately 13 feet. These disparities resulted not only from measurements taken at different times but from varying interpretations of the covenant requirement in Paragraph 9 that height be "measured from the natural ground at the highest point adjacent to the building."

Also disputed was whether defendants submitted their construction plans for approval as required by a separate covenant binding on subdivision lot owners. Plaintiffs maintained that plans were not submitted for approval until the residence was substantially completed, at which time approval was granted subject to conformance with all applicable covenants. Defendants

asserted that the submission and approval during actual construction was sufficient and that all covenants were complied with.

The final area of contention was whether defendants were given timely notice of possible violation of the height restriction. Plaintiffs argued that a series of oral and written notices were given as soon as it became reasonably apparent that the covenant may have been violated. Defendants countered they were not notified until substantial completion of the structure.

■ In deciding whether summary judgment is proper, a court must look to the whole record and view the matters presented in the light most favorable to support the right to trial on the merits. *C & H Construction & Paving Co. v. Citizens Bank*, 93 N.M. 150, 597 P.2d 1190 (Ct.App. 1979). In considering defendants' summary judgment motion in the case at bar the district court particularly directed its attention to the building height issue and viewed the pertinent facts in the light most favorable to the parties contesting the motion. Thus, the court assumed for purposes of considering the motion that the structure was indeed 22.68 feet high as plaintiffs asserted. Nevertheless, the court concluded such a violation was *de minimis* and would not preclude summary judgment.

■ Such a determination requires resolution of a factual matter and, therefore, cannot support the court's judgment on the facts of the instant case. This Court has recognized the importance of enforcing protective covenants where the clear language of the covenants as well as the surrounding circumstances indicates an intent to restrict use of land. *See Montoya v. Barreras*, 81 N.M. 749, 473 P.2d 363 (1970); *Hoover v. Waggoman*, 52 N.M. 371, 199 P.2d 991 (1948). The purpose of enforcing restrictive covenants is well established.

Historically, restrictive covenants have been used to assure uniformity of development and use of a residential area to give the owners of lots within such an area some degree of environmental stability. To permit individual lots within an area to be relieved of the burden of such covenants, in the absence of a clear expression in the instrument so providing, would destroy the right to rely on restrictive covenants which has traditionally been upheld by our law of real property.

*Montoya v. Barreras*, at 751, 473 P.2d at 365. Furthermore, where covenants manifest a general plan to restrict a tract or subdivision to residential purposes, such covenants constitute valuable property rights of all lot owners therein. *Id.*

The restrictive covenants in Ranchos de Placitas were clearly intended in part to preserve the particular residential character of that subdivision by providing for unrestricted views of the surrounding mountains and for preservation of the general rural nature of the area. Any violation of the building height restriction or any other restrictive covenant would have a potential adverse effect on the property rights of surrounding lot owners. The principle that the law favors a full trial on the merits thus becomes particularly important in this case where the effect of the summary judgment is to prohibit enforcement of a restrictive covenant affecting valuable property rights. As such, the trial court was required to view the defendants' summary judgment motion with greater scrutiny than is apparent in the record.

■ In considering plaintiffs' initial request for injunctive relief and in ruling the asserted covenant violation to be *de minimis*, the district court was clearly invoking its equity powers. Any request for injunctive relief is directed to the sound discretion of the trial court. *State v. First Judicial District Court*, 69 N.M. 295, 366 P.2d 143 (1961). In determining whether such relief should issue, the court may consider a number of factors and should balance equities and hardships where required. *See Gaskin v. Harris*, 82 N.M. 336, 481 P.2d 698 (1971).

■ Defendants argue that a range of factors may be weighed by a court in considering injunctive relief. We agree with

this proposition. Factors which courts generally have considered include

> (1) the character of the interest to be protected, (2) the relative adequacy to the plaintiff of injunction in comparison with other remedies, (3) the delay, if any, in bringing suit, (4) the misconduct of the plaintiff if any, (5) the interest of third persons, (6) the practicability of granting and enforcing the order or judgment, and (7) the relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied. (Footnote omitted).

Annot., 1 A.L.R. 4th 1021, § 2[b] (1980). However, it is not for a reviewing court to initially weigh all relevant factors. It is the trial court which must consider in detail all factors raised by the circumstances of a particular case.

In the present case there is insufficient indication in the record that the district court considered the various equitable factors reasonably raised by the parties. For example, there were disputes as to whether defendants submitted construction plans for approval in a timely manner, whether plaintiffs gave repeated notices of a potential covenant violation prior to substantial completion of the structure, whether defendants acted in good faith after receiving any such notices, and whether plaintiffs delayed unreasonably in bringing their action. There is no indication that the court resolved any of these disputes, balanced the relative hardships, or duly considered any of the other potentially applicable factors outlined above.

■ Summary judgment is a drastic remedy which should only be used with great caution. *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977). Because of the broad range of factors bearing on equitable relief which must be considered in this dispute, summary judgment is clearly an even more drastic remedy in equity than at law. A suit for injunctive relief, like any other lawsuit, may be decided by summary judgment only when there are no material factual matters in dispute. When such disputes are evident in the pleadings and accompanying affidavits, the resolution of facts may not be determined by the judge but must be resolved upon a trial of those factual issues.

The summary judgment granted by the trial court is reversed, and the cause is remanded for reinstatement for trial upon the court's docket.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.