806 P.2d 1054

**Daniel B. APPEL and Patricia E. Appel, Plaintiffs–Appellants,**

**v.**

**The PRESLEY COMPANIES, a foreign corporation, a/k/a The Presley Company of New Mexico, a New Mexico corporation, Wolfe Company, Inc., Charles E. Cook, C.W. Reynolds and Thomas N. Burlison, Defendants–Appellees.**

No. 18798.

Supreme Court of New Mexico.

March 8, 1991.

Cynthia A. Fry, M. Terrence Revo, Albuquerque, for plaintiffs-appellants.

Pongetti, Myers & Wilson, John A. Myers, Kevin J. McCready, Moses, Dunn, Beckley, Espinosa & Tuthill, Leonard G. Espinosa, Albuquerque, for defendants-appellees.

## OPINION

FRANCHINI, Justice.

Plaintiffs Daniel and Patricia Appel appeal from an order granting summary judgment to defendants The Presley Company of New Mexico (Presley) and Wolfe Company, Inc. (Wolfe). The Appels are homeowners in the Vista Del Sandia subdivision in Albuquerque, which is owned by Presley. Wolfe is a developer and the owner of a tract in the subdivision on which it intends to build four townhouses. In their complaint, the Appels asserted three claims: breach of restrictive covenants; negligent and fraudulent misrepresentation; and unfair trade practices. They requested a permanent injunction enjoining Wolfe from constructing any building on its lot unless it complied with the restrictive covenants applicable to the subdivision. The Appels also requested a permanent injunction enjoining Presley from constructing any building in the arroyo area of the subdivision. In addition, the Appels sought compensatory and punitive damages against Presley. We reverse and remand.

### FACTS

On January 3, 1979, Presley recorded with the Bernalillo County Clerk a replat for the Vista Del Sandia subdivision. On October 8, 1982, Presley recorded a set of restrictive covenants covering all the property shown on the replat, including a tract in the subdivision arroyo. The covenants regulated the land use, building type, quality, and size of the residential single-family dwellings that were to be placed on the subdivision property. In November 1982, the Appels met with Presley and its agents regarding the possible purchase of a lot in the subdivision. The Appels allege certain representations were made concerning lots in the subdivision and the purpose of the restrictive covenants. The Appels further allege that the restrictive covenants were used as a sales tool which they relied on in purchasing a lot and constructing their home. On April 25, 1984, the subdivision's Architectural Control Committee, consisting of three members who were all employees or officers of Presley, executed an amendment of the restrictive covenants. This amendment deleted nine lots from the effect of the restrictive covenants, including Lots 28–A and 30 which are involved in this appeal. Since the covenants were amended, some of the lots have been subdivided into smaller lots and townhouses have been constructed on them. Presley sold Lot 28–A to Wolfe in April 1988. Wolfe is replatting Lot 28–A into four lots for single family residences. No development plans exist for Lot 30, the arroyo lot.

## I. RESTRICTIVE COVENANTS

In deciding whether summary judgment is proper, a court must look to the whole record and view the matters presented in the light most favorable to support the right to trial on the merits. *C & H Constr. & Paving Co. v. Citizens Bank,* 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979). The Appels filed their complaint to enjoin Wolfe's proposed replatting and construction and to enjoin the construction of any buildings on Lot 30. The following provisions contained in the restrictive covenants were relied on by the trial court to authorize the amendments:

15. *ARCHITECTURAL CONTROL COMMITTEE:* * * * At any time, the then record owners of the majority of the lots shall have the power, through a duly recorded written instrument, to change the membership of the Committee or to withdraw from the Committee, or restore to it any of its powers and duties.

\* \* \* \* \* \*

17. *TERMS OF COVENANTS:* These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of thirty (30) years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years, unless an instrument signed by a

majority of the then lot owners of the lots have been recorded, agreeing to change said covenants in whole or in part.

\*    \*    \*    \*    \*    \*

20.  *VARIANCE:* A majority of the Architectural Control Committee, may from time to time, make amendments and/or exceptions to these restrictions, covenants and reservations without the consent of any of the owners of any of the other lots in said subdivision.

In particular, the trial court emphasized the "amendments and/or exceptions to these restrictions" language of paragraph 20 in the restrictive covenants. The trial court found that the language was unambiguous and that the covenant permitted the Architectural Control Committee to make exceptions and remove individual lots from the covenants. This court has recognized the importance of enforcing protective covenants where the clear language of the covenants, as well as the surrounding circumstances, indicates an intent to restrict use of land. *Cunningham v. Gross,* 102 N.M. 723, 699 P.2d 1075 (1985). In *Montoya v. Barreras,* 81 N.M. 749, 473 P.2d 363 (1970), we refused to allow an individual lot to be removed from the effect of a restrictive covenant in spite of a provision in the covenant allowing change by majority approval. We held: "To permit individual lots within an area to be relieved of the burden of such covenants, in the absence of a clear expression in the instrument so providing, would destroy the right to rely on restrictive covenants which has traditionally been upheld by our law of real property." *Montoya,* 81 N.M. at 751, 473 P.2d at 365. Here, the trial court found the "amendments and/or exceptions to these restrictions" language to be the clear expression required by *Montoya.*

We agree that the language permitted the Architectural Control Committee to make amendments or exceptions to the restrictive covenant. However, courts have determined that provisions allowing amendment of subdivision restrictions are subject to a requirement of reasonableness. As stated in 7 G. Thompson, *Real Property,*

§ 3171 (repl.1962), "A court of equity will not enforce restrictions where there are circumstances that render their enforcement inequitable * * *."

In *Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc.,* 303 So.2d 665 (Fla.Dist.Ct.App.1974), the court addressed a similar clause reserving to the land developer the right to alter, amend, repeal, or modify restrictions at any time in his sole discretion. The court noted the inherent inconsistency between an elaborate set of restrictive covenants, designed to provide for a general scheme or plan of development, and a clause reserving in the grantor the power to change or abandon any part of it. The court reconciled the inconsistency by reading into the restrictive clause a requirement of reasonableness. Thus, the clause allowing the owners the right to alter, amend, repeal, or modify these restrictions at any time in its sole discretion is a valid clause so long as it is exercised in a reasonable manner so as not to destroy the general scheme or plan of development. *Id.* at 666.

The Supreme Court of Alabama also imposed a test of reasonableness when a developer exercised his reserved right to cancel or modify any of the restrictive covenants. *Moore v. Megginson,* 416 So.2d 993 (Ala.1982). The court affirmed the trial court's finding that the developer's "exercise of his right to cancel or modify the restrictive covenants 'must be reasonable, with due regard for the property rights and investments of the persons who relied upon the residential covenants which were in full force at the time of their purchase.'" *Id.*

A determination of whether the exceptions were reasonably exercised or whether they essentially destroyed the covenants requires resolution of a factual matter and, therefore, the summary judgment must be reversed and testimony should be taken accordingly. Additionally, if it is found that the exceptions were applied in an unreasonable manner, thereby breaching the covenants, the trial court should apply the doctrine of relative hardships.

As we stated in *Cunningham,* any request for injunctive relief is directed to the

sound discretion of the trial court. "In determining whether such relief should issue, the court may consider a number of factors and should balance equities and hardships where required." *Cunningham,* 102 N.M. at 725, 699 P.2d at 1077. Factors for the trial court to consider include:

(1) [T]he character of the interest to be protected, (2) the relative adequacy to the plaintiff of injunction in comparison with other remedies, (3) the delay, if any, in bringing suit, (4) the misconduct of the plaintiff if any, (5) the interest of third persons, (6) the practicability of granting and enforcing the order or judgment, and (7) the relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied.

*Id.* at 726, 699 P.2d at 1078 (citing Annotation, *Restrictive Covenants as to Height of Structures or Buildings,* 1 A.L.R.4th 1021 (1980)).

In view of the foregoing, we reverse and remand on the trial court's order granting summary judgment on Claim I.

## II. MISREPRESENTATION AND UNFAIR TRADE PRACTICES ACT

 The trial court erred in granting summary judgment on the claims of misrepresentation and unfair trade practices. A proceeding on a motion for summary judgment is not an opportunity to resolve factual issues, but should be employed to determine whether a factual dispute exists. *Pharmaseal Laboratories, Inc. v. Goffe,* 90 N.M. 753, 759, 568 P.2d 589, 595 (1977). If genuine controversies as to the facts exists, a motion for summary judgment should be denied and the factual issues should proceed to trial. *Great W. Constr. Co. v. N.C. Ribble Co.,* 77 N.M. 725, 729, 427 P.2d 246, 249 (1967). The trial court erred in finding no material issue of fact regarding misrepresentation and violation of the Uniform Trade Practices Act. The trial court focused only on statements made by Presley representatives in 1982 about certain lots not being developable, ignoring other alleged misrepresentations concerning the effect of the covenants. In considering a motion for summary judg-

ment, the trial court must view the pleadings, affidavits and depositions in the light most favorable to the opposing party. *State v. Intigon Indem. Corp.,* 105 N.M. 611, 612, 735 P.2d 528, 529 (1987). The Appels produced sufficient evidence to raise factual questions as to whether Presley misrepresented that Lot 30 would remain open space and that the covenants would maintain the intended character of the subdivision. Whether or not the statements made to the Appels about Lots 28-A and 30 were true or false at the time made are issues of fact to be determined at trial, not by the court on summary judgment.

The order granting summary judgment by the trial court is reversed on all three claims and the cause is remanded for reinstatement for trial upon the court's docket.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.