1998-NMCA-007

952 P.2d 467

**CYPRESS GARDENS, LTD.,
Plaintiff–Appellant,**

v.

**Terry L. PLATT and Caterina M.
Platt, Defendants–Appellees.**

No. 18024.

Court of Appeals of New Mexico.

Dec. 3, 1997.

Dennis M. McCary, Nancy Augustus, Albuquerque, for Plaintiff–Appellant.

Anthony J. Williams, Los Lunas, for Defendants–Appellees.

### OPINION

BOSSON, Judge.

1. In this case of first impression, we hold that an enforceable restrictive covenant, which includes a reserved right to approve or reject mobile homes, need not contain specific standards for granting or denying approval. The right to approve or deny shall be governed instead by a general standard of reasonableness. We reverse and remand.

### BACKGROUND

2. On April 19, 1988, Plaintiff Cypress Gardens, Ltd., the developer, filed a Declaration of Covenants with the Valencia County Clerk. This Declaration set out use restrictions and building and planning restrictions which included the following: restrictions limiting the land to residential, single-family dwellings with minimum size restrictions; requirements for fences, signs, and animals; and restrictions on the placement of mobile homes on individual lots, including a requirement that all mobile homes meet with the prior approval of the developer. This last requirement is the subject of this appeal. Although duly recorded, this Declaration was never acknowledged, as required by NMSA 1978, Section 14–8–4 (1981).

3. On March 10, 1993, Plaintiff sold lot 224 to the Clines on a real estate contract. In early June 1995, the Platts (Defendants) bought the lot from the Clines, acquiring their interest under the real estate contract. Plaintiff alleges that Defendants knew of the contents of the Declaration of Covenants, and thus knew of the requirement for obtaining the developer's prior approval of mobile homes, and also knew that the developer intended this covenant to run with the land. At the time Defendants purchased lot 224, there were 92 houses and 20 mobile homes already in the subdivision, and 222 lots remained vacant. Plaintiff also alleges that no used mobile homes had been approved in the subdivision since March 1989.

4. In July 1995, Defendants moved a used mobile home onto lot 224 without seeking Plaintiff's approval. When Plaintiff learned of this, Defendants were immediately told that they had violated the terms of the Declaration and that they should not build a stem wall around the mobile home. Defendants ignored Plaintiff's caution; they did not remove the mobile home from lot 224 and built a stem wall around the home.

5. On July 26, 1995, Plaintiff filed a complaint to enforce the restrictive covenants and have the mobile home removed from the lot. On August 13, 1996, Defendants filed a motion to dismiss the complaint for failure to state a claim on the grounds that unacknowledged covenants, even though recorded, are unenforceable. On September 17, 1996, Plaintiff filed an amended complaint alleging that the covenants were enforceable as equitable servitudes because Defendants had actual notice of the Declaration and the restrictions set forth therein which intended a general plan or scheme of development. The district court dismissed the amended complaint. The court found the covenants fatally defective because they granted unlimited discretion to the developer to approve or reject mobile homes, thus defeating any idea of a common scheme or plan. Plaintiff raises two points on appeal: (1) whether the covenants qualify as enforceable equitable servitudes, and (2) whether the covenants must articulate specific standards as the grounds for the developer's approval or disapproval of a particular mobile home.

### DISCUSSION

6. We first address the issue of whether the amended complaint alleges sufficient facts to establish an equitable servitude. We then examine the legal issue of whether the covenants must contain specific standards. A motion to dismiss under Rule 1–012(B)(6), NMRA 1997 is properly granted

only when it appears that the plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim. *Shea v. H.S. Pickrell Co.,* 106 N.M. 683, 685, 748 P.2d 980, 982 (Ct.App.1987). The purpose of a motion to dismiss is to test the law of the claim, not the facts that support it. *Id.; Gonzales v. United States Fidelity & Guar. Co.,* 99 N.M. 432, 433, 659 P.2d 318, 319 (Ct.App.1983). Only when there is a total failure to allege matter essential to the relief sought should a motion to dismiss for failure to state a claim be granted. *Las Luminarias of the N.M. Council of the Blind v. Isengard,* 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct.App.1978).

## EQUITABLE SERVITUDES

■ 7. Defendant is correct that the Declaration of Covenants was legally ineffective to establish restrictive covenants that run with the land because the Declaration was not acknowledged before a notary public. *See Pollock v. Ramirez,* 117 N.M. 187, 189–90, 870 P.2d 149, 151–52 (Ct.App.1994). Our Supreme Court has held, however, that under certain circumstances such covenants may be enforced as equitable servitudes if they meet the following requirements: (1) the covenant must touch and concern the land; (2) the original covenanting parties must intend the covenant to run with the land; and (3) the successor to the burden must have notice of the covenant. *Lex Pro Corp. v. Snyder Enters., Inc.,* 100 N.M. 389, 391, 671 P.2d 637, 639 (1983).

### Touch and Concern

■ 8. The requirement that running covenants touch and concern the land is the only one which focuses on an objective analysis of the contents of the covenant itself rather than the intentions of and relationships between the parties. 9 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* § 60.04[2][a], at 60–46 (1997). The concept of "touch and concern" has been described as one "that can be explored and felt better than it can be defined." William B. Stoebuck, *Running Covenants: An Analytical Primer,* 52 Wash. L.Rev. 861, 869 (1977). A covenant that meets this requirement can be one that calls for either doing physical things to the land such as building a wall, or refraining from doing physical things to the land such as a promise "not to plow the soil, not to build a structure, or not to build multifamily dwellings." *Id.* at 870. In the current case, the requirement that mobile homes be approved by the developer before they are placed on lots fits comfortably within this category.

9. Additionally, in order "[t]o run, equitable restrictions must touch and concern benefited and burdened land." *Id.* at 892. The Supreme Court of New Mexico has held that restrictions on the use of land are "mutual, reciprocal, equitable easements in the nature of servitudes in favor of owners of other lots within the restricted area, and constitute property rights which run with the land." *Montoya v. Barreras,* 81 N.M. 749, 751, 473 P.2d 363, 365 (1970). In the current case, Plaintiff has alleged that the Declaration of Covenants sets forth restrictions on land use imposed upon each lot in favor of each and every other lot within the subdivision. Restrictions on mobile homes both benefit and burden other lots within the subdivision. Thus, the Declaration appears to satisfy the first requirement of enforceable equitable servitudes.

### Intent to Bind Successors

10. The Declaration of Covenants states that the covenants shall run with the land. Landowners who, upon the sale of the land, seek to protect property they retain by means of a restrictive covenant intend the restriction to be permanent. *See Lex Pro Corp.,* 100 N.M. at 392, 671 P.2d at 640. Thus, the Declaration provides evidence of the covenanting parties' intent, even though it is unenforceable in law because it does not satisfy the statutory acknowledgment requirement of Section 14–8–4.

■ 11. Additionally, Plaintiff alleges that the restrictions contained in the Declaration set forth a general plan or scheme of development for the Cypress Gardens Subdivision and claims that the Declaration was distributed to purchasers of lots within the subdivision. When the owner of a tract subdivides and sells under a general plan of

restriction, it may be shown from the terms of the instrument, as well as from the situation and surrounding circumstances, that the grantor intended to impose reciprocal restrictions. *See Sharts v. Walters,* 107 N.M. 414, 416, 759 P.2d 201, 203 (Ct.App.1988). " '[E]ffect is to be given to the intention of the parties as shown by the language of the whole instrument, considered with the circumstances surrounding the transaction.' " *Montoya,* 81 N.M. at 751, 473 P.2d at 365 (quoting *Hoover v. Waggoman,* 52 N.M. 371, 376, 199 P.2d 991, 994 (1948)).

12.  Relying on *Suttle v. Bailey,* 68 N.M. 283, 287, 361 P.2d 325, 327 (1961), Defendants argue that the existence of previously approved mobile homes in the Cypress Gardens Subdivision negates the developer's intent to have the equitable servitudes run with the land. In *Suttle,* our Supreme Court held that a grantor's reservation of a general power to dispense with restrictive covenants destroyed the mutuality or reciprocity necessary to create a covenant that runs with the land. *Id.* The Court stressed that, as a result, no "grantee had any assurance, other than the personal integrity of the original grantor, that the restrictions on any adjacent lot or lots in the subdivision might not be altered or annulled at any time without his consent." *Id.* This same point was emphasized in *Montoya,* in which the Court held: "To permit individual lots within an area to be relieved of the burden of such covenants, in the absence of a clear expression in the instrument so providing, would destroy the right to rely on restrictive covenants which has traditionally been upheld by our law of real property." 81 N.M. at 751, 473 P.2d at 365. Defendants assert that to allow mobile homes in some cases and not in others would destroy the reciprocity in the servitudes. Such a power, Defendants argue, would destroy reciprocity just as the power to dispense with covenants did in *Suttle.*

13.  We do not read *Suttle* to limit Plaintiff's authority to enforce the covenants. In the current case, Plaintiff is neither seeking to annul or dispense with the equitable servitudes nor choosing not to enforce them, as was the case in *Suttle.* To the contrary, Plaintiff is seeking to enforce a servitude,

relied upon by prior purchasers of lots in Cypress Gardens, that all lot holders seek and obtain prior approval before placing mobile homes on their lots. The reserved power to enforce an equitable servitude, unlike the power to annul one, does not terminate such equitable servitudes, but reinforces them. Accordingly, the intent of the parties as illustrated by the language of the Declaration provides sufficient facts at least to state a claim that the parties intended the restrictions to run with the land. *See Pillsbury v. Blumenthal,* 58 N.M. 422, 427, 272 P.2d 326, 329 (1954) (an objection to a complaint that it does not state sufficient facts to state a cause of action is good only when there is a total failure to allege some matter which is essential to the relief sought).

**Notice**

14.  Plaintiff alleges that Defendants had actual notice of the restrictions contained in the covenants that required prior approval before placing mobile homes on lots and that imposed a common scheme or plan of development on the Cypress Gardens Subdivision. The Declaration was distributed by the developer and its real estate agent to purchasers of lots within that subdivision. Plaintiff also alleges that Defendants received a copy of the Declaration and were made aware it applied to lot 224. Whether the parties have been placed on actual notice is a question of fact. *Pollock,* 117 N.M. at 192, 870 P.2d at 154. Plaintiff has stated a claim on this point. Thus, we assume notice in Plaintiff's favor for the purposes of viewing the complaint.

15.  Defendants argue that an enforceable equitable servitude must be part of a common scheme or plan that is clear to purchasers when they buy a lot. Defendant maintains there was no such scheme or plan here because mobile homes in fact existed in the subdivision. We disagree with Defendants' analysis. An equitable servitude does not require a common scheme or plan. *See Pollock,* 117 N.M. at 191, 870 P.2d at 153. A common scheme or plan may imply use restrictions, and that common scheme or plan may place purchasers on inquiry notice when the land has a uniform appearance and the

property demonstrates a general plan or common scheme of development. *Id.* at 192, 870 P.2d at 154; *Walters,* 107 N.M. at 416, 759 P.2d at 203. However, in Defendants' case, Plaintiff alleges that Defendants had *actual,* personal notice of the restrictions before they bought lot 224, and therefore the appearance of other lots in the subdivision was immaterial to the question of notice. When a party has actual notice, there is no legal need to imply notice from the existence of a common scheme or plan. Therefore, we hold that Plaintiff has alleged sufficient facts to state a claim to enforce these covenants as equitable servitudes unless some additional, more precise standards are legally necessary to define and restrict Plaintiff's power of approval.

## THE DEVELOPER'S POWER OF APPROVAL

■ 16. Defendants contend that the equitable servitudes are unenforceable because the Declaration contains no clear standards for the developer to apply when deciding to approve or disapprove of a particular mobile home. This is an issue of first impression in New Mexico.

17. Some jurisdictions require reasonable parameters in the form of written or de facto guidelines to show that the approving authority is acting reasonably. *See Town & Country Estates Ass'n v. Slater,* 227 Mont. 489, 740 P.2d 668, 671 (1987) (holding that a restrictive covenant requiring approval of building plans by homeowners' association which failed to define standard of approval was too vague for enforcement); *Prestwick Landowners' Ass'n v. Underhill,* 69 Ohio App.2d 45, 429 N.E.2d 1191, 1195 (1980) (holding that absent written or de facto guidelines to give notice to lot owners as to the kind of fence that would qualify for consent, a statement that plans were not "pleasing" enough was insufficient ground to sustain an injunction).

18. Most jurisdictions, however, recognize the validity and, in a proper case, the enforceability of covenants requiring consent to construction or approval of plans even if those covenants do not contain explicit standards for approval. *See* John D. Perovich,

Annotation, *Validity and Construction of Restrictive Covenant Requiring Consent to Construction on Lot,* 40 A.L.R.3d 864, 870 (1971). Thus, in *Marose v. Deves,* 697 S.W.2d 279, 289 (Mo.Ct.App.1985), the Missouri Court of Appeals enforced a restriction requiring complete plans and specifications to be submitted and approved before any building was undertaken, if the approved authority was reasonably exercised. In *Marose,* the covenant required that "[n]o building or other structure shall be commenced upon any one lot until the location and the complete plans and specifications have first been submitted and the same approved by the dedicators or assignee." *Id.* at 281. The court held that the architectural committee exercised its power reasonably in demanding modification of buildings and stated that "where the discretion to grant or withhold is reasonably exercised[,]" no express standards are required. *Id.* at 289. Similarly, in *Rhue v. Cheyenne Homes, Inc.,* 168 Colo. 6, 449 P.2d 361, 362–63 (1969) (en banc), the court upheld the validity of a restriction that no building be erected or altered until the plans showing specifications and location of the structure had been approved by an architectural committee.

19. The Florida Court of Appeals found reasonable a homeowners' association's removal, for purely aesthetic reasons, of a satellite dish placed in a front yard, even though other homes had dishes in their backyards. *Killearn Acres Homeowners Ass'n v. Keever,* 595 So.2d 1019, 1021–22 (Fla.Dist.Ct.App. 1992). All that is necessary for the exercise of such power is that there be a reasonable basis for granting approval in one instance and denying it in another. *Minton v. Lichtenstein,* 487 S.W.2d 43, 47 (Mo.Ct.App. 1972); *Raintree Homeowners Ass'n v. Bleimann,* 342 N.C. 159, 463 S.E.2d 72, 74 (1995); *Thayer v. Thompson,* 36 Wash.App. 794, 677 P.2d 787, 789 (1984). The Superior Court of New Jersey, Chancery Division, also applied this reasonableness standard and stated that the "most commonly voiced criticism of such an arrangement is that it is vague, fixes no standards and hence affords the grantor an opportunity to be capricious, unfair and arbitrary." *Syrian Antiochian*

*Orthodox Archdiocese v. Palisades Assocs.*, 110 N.J.Super. 34, 264 A.2d 257, 261 (N.J.Super.Ct. Ch. Div.1970). The court observed, however, that private contractual arrangements are not subject to constitutional requirements of objective standards. *Id.*

20. In the private sector, standards of reasonableness are commonly applied or implied which take into account the facts and the circumstances. *See, e.g.*, NMSA 1978, § 55–1–102(3) (1961) (stating that under the Uniform Commercial Code, "parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable"); *Watson Truck & Supply Co. v. Males*, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990) (every contract imposes upon parties a duty of good faith and fair dealing in its performance and enforcement); *Boss Barbara, Inc. v. Newbill*, 97 N.M. 239, 241, 638 P.2d 1084, 1086 (1982) (holding that the right of approval is subject to standards of reasonableness implied by law).

21. Although New Mexico has never dealt directly with the issue of covenants reserving the power to approve or reject building plans or structures, our Supreme Court has applied such a reasonableness standard in a similar situation. In *Appel v. Presley Cos.*, 111 N.M. 464, 466, 806 P.2d 1054, 1056 (1991), the Supreme Court addressed the validity of a covenant which reserved the right of a committee to make exceptions or amendments to building restrictions. The Supreme Court held that such provisions are subject to a requirement of reasonableness. *Id.* The Court further noted that "[a] determination of whether the exceptions were reasonably exercised or whether they essentially destroyed the covenants requires resolution of a factual matter." *Id.*

22. In the current case, we are guided by *Appel.* We hold that Plaintiff may exercise its reserved authority to approve or reject mobile homes as long as it does so reasonably which includes in good faith. Any determination of whether the subdivider reasonably exercised its authority in seeking to enjoin Defendants from placing a mobile home on their lot also requires the resolution of a factual matter. *See id.*, 111 N.M. at 466, 806 P.2d at 1056. We reject the argument

that such covenants are unenforceable as a matter of law, as the district court ruled in this case.

23. In determining what is reasonable in such cases, the trial court should consider the facts and circumstances surrounding the application of the subdivider's power of approval. As acknowledged by our Supreme Court in *Appel,* " '[a] court of equity will not enforce restrictions where there are circumstances that render their enforcement inequitable.' " *Id.* (quoting 7 George W. Thompson, *Commentaries on the Modern Law of Real Property,* § 3171, at 188 (Repl. 1962)). It is not, however, unreasonable for Plaintiff to allow some mobile homes to be placed within the subdivision, while rejecting others, as long as the basis for the decision is reasonable. Additionally, *Appel* requires that in deciding whether injunctive relief should issue, a court may consider a number of factors in order to balance the equities and hardships involved, including the following:

> '(1) [T]he character of the interest to be protected, (2) the relative adequacy to the plaintiff of injunction in comparison with other remedies, (3) the delay, if any, in bringing suit, (4) the misconduct of the plaintiff if any, (5) the interest of third persons, (6) the practicability of granting and enforcing the order or judgment, and (7) the relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied.'

111 N.M. at 467, 806 P.2d at 1057 (quoting *Cunningham v. Gross,* 102 N.M. 723, 726, 699 P.2d 1075, 1078 (1985)).

## CONCLUSION

24. Because the lower court held that the restrictive covenants were unenforceable per se, without waiting for proof of whether they were reasonably applied, the court's ruling was premature. We reverse and remand for further proceedings.

25. **IT IS SO ORDERED.**

PICKARD and BUSTAMANTE, JJ., concur.