IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-030

Filing Date: June 27, 2013

Docket No. 33,364

LEONARD NETTLES and
KAY NETTLES,

       Plaintiffs-Petitioners,

v.

TICONDEROGA OWNERS' ASSOCIATION, INC.,
THE TICONDEROGA RECREATIONAL ASSOCIATION, INC.,
JAMES W. MUNDY, JAMES CUNNINGHAM, RANDALL
BEVIS, and DAVID PALM,

       Defendants-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
Sheri A. Raphaelson, District Judge

Van Amberg, Rogers, Yepa, Abeita & Gomez, L.L.P
Ronald J. Van Amberg
Santa Fe, NM

for Petitioners

Keleher & McLeod, P.A.
Ann Maloney Conway
Christina Muscarella Gooch
Brian J. O'Rourke
Thomas C. Bird
Albuquerque, NM

Carpenter, Hazelwood, Delgado & Wood, P.L.C
Javier Benjamin Delgado
Joshua M. Bolen
Kellie J. Callahan

for Respondents

1

## OPINION

**BOSSON, Justice**

**{1}** Covenants in planned subdivisions impose binding obligations upon the owners. When amended by a majority of the owners, to the detriment of a minority, those revised amendments can be subjected to legal scrutiny. In this case we address two criteria for such legal analysis—uniformity and reasonableness. While failing to create a triable question on uniformity, the reasonableness of the amendment in this case—amending the definition of common easement—must be decided at trial and not summary judgment. Accordingly, we reverse summary judgment on this one issue, while affirming all other issues, and remand to the district court for further proceedings.

## BACKGROUND

**{2}** In 2001, Leonard and Kay Nettles (hereinafter collectively Nettles) purchased property and built a home in a remote subdivision in Rio Arriba County, New Mexico known as Ticonderoga. Taking advantage of its mountainous location, Ticonderoga was a planned subdivision that contained common outdoor recreation areas such as lakes, ponds, and hiking trails for use by the property owners. Nettles' home was located in the Boulders area, one of the more remote areas of the subdivision.

**{3}** At the time of the Nettles purchase, the lots in Ticonderoga were subject to various covenants, and the subdivision was governed by a Homeowners' Association. Under the original covenants, the Homeowners' Association was responsible for maintaining all "[c]ommon [e]asements" which were defined to include all roads in the subdivision, including the particular road serving the Boulders area and the Nettles property.

**{4}** That changed in 2004 during its annual meeting, when the Homeowners' Association voted to amend the covenants and articles of incorporation. The original covenants explicitly allowed for amendment if passed by those members holding at least 75 percent of the voting power of the Homeowners' Association. The amendments passed by the requisite number of required votes.

**{5}** Most important to this Opinion, one of the amendments changed the definition of "common easements." The new definition no longer included all roads in Ticonderoga, but instead was limited to certain, specific roads that led to common recreation areas. The new definition now excluded the road that served the Boulders area and more specifically Nettles' home as well as some other roads, but still included those roads that led to the majority of homesites in Ticonderoga. As a result of the changed definition, Nettles was still required to pay common assessments to fund the maintenance costs of these other roads, but was now required to maintain the Boulders road privately, along with a few other owners of undeveloped lots on that road, at Nettles' own expense. Given the rugged, northern location of the Ticonderoga subdivision, the cost of road maintenance, including snow removal, is

2

likely a considerable expense. Nettles also complains that this amendment made the owners of lots in the Boulders area responsible for installing a gate at the entrance to the Boulders if they desired one, contrary to representations allegedly made by the original developer, but not the Homeowners' Association.

{6}     A second amendment allegedly diluted Nettles' voting rights in the Homeowners' Association. According to Nettles, the original articles allowed for one vote per lot. The amendment added a second class of votes, based on one vote per acre owned in Ticonderoga. All future propositions now had to be passed by a majority of both classes of votes.

{7}     Unhappy with the consequences of these amendments, Nettles filed suit against the Homeowners' Association. The Association filed for summary judgment, claiming that all the actions taken were explicitly authorized by the governing documents of the Association. Nettles countered, claiming that the amendments violated New Mexico law on the subject of covenant amendments because they were not uniform. The district court granted summary judgment for the Association.

{8}     On appeal, the Court of Appeals affirmed in a memorandum opinion. *Nettles v. Ticonderoga*, No. 31,342, slip op. (N.M. Ct. App. Nov. 28, 2011). The Court rejected Nettles' argument based on alleged non-uniformity of the amendments, stating "[t]he change to the covenants applies to all the properties in the subdivision, such that association maintenance will be only for the common easements as identified on the plat." *Nettles,* No. 31,342, slip op. at 3. In addition, the Court noted that "[Nettles] *appear*[*s*] to be arguing that amendments requiring a minority to maintain their own roads while also requiring them to help maintain roads used by the majority is, as a matter of law, unreasonable." *Id.* at 4-5 (emphasis added). This argument was also rejected, with the Court, concluding that "[i]t appears that the purpose of the changes was to clearly define the common easements in the subdivision as those roads that led to Recreation Areas." *Id.* at 5. Accordingly, the Court of Appeals did not find the amendments unreasonable. *Id.*

{9}     We granted certiorari to address an area of the law that has received only occasional attention from this Court yet remains vital to those with property interests in planned subdivisions like Ticonderoga throughout our state. 2012-NMCERT-002, 291 P.3d 1291.

**DISCUSSION**

**The Requirement of Uniformity in Covenant Amendments**

{10}     Nettles continues to claim that the covenant amendments described above were not uniform, and therefore are prohibited under the legal principles of uniformity we previously set forth in *Montoya v. Barreras*, 81 N.M. 749, 473 P.2d 363 (1970). In *Montoya*, this Court invalidated an amendment to restrictive covenants that would have relieved one particular lot from all the burdens of those restrictions and permitted commercial development of only that one lot. *Id.* at 753, 473 P.2d at 367. Clearly, the covenant amendment, benefitting only

3

one lot owner, was not uniform. In the analysis, this Court first determined that non-uniform amendments were not explicitly authorized by the covenants themselves. *Id.* at 751, 473 P.2d at 365. We then reasoned under such circumstances that allowing non-uniform amendments

> would permit the majority of owners to remove all restrictions from their lots while leaving the burden on the lots of the minority. It would permit the majority of owners, whose lots might not be adversely affected because of their insulated location in the subdivision, to authorize offensive consequences for the minority by removing or imposing restrictions only on certain lots within the area. Because the grantor encumbered all of the property with restrictions, we cannot infer from the declaration the intention that any subsequent change or changes in the restrictions could be made applicable to only one lot or a portion of the lots in the residential subdivision.

*Id.* at 753, 473 P.2d at 367.

**{11}** Relying on this holding in *Montoya*, Nettles argues that "[t]he amendment made to the covenants by the Majority had the clear effect of relieving burdens from the Majority while increasing them for the minority. . . . This is prohibited under the uniformity requirement of *Montoya*." While we agree with the sentiment expressed, which we will address shortly, we cannot agree that these amendments violated the uniformity requirement of *Montoya*.

**{12}** The amendment at issue in *Montoya* was non-uniform on its face. It addressed only one lot, that owned by Montoya, and "relieved and excluded from the burden of residential restrictions and covenants" only that one lot. *Id.* at 750, 473 P.2d at 364. The amendments challenged by Nettles in this case are very different.

**{13}** In particular, the amended definition of common easement, of which Nettles complains, applies uniformly to each lot in the subdivision. The amendment changed the definition of common easement, which previously included all the roads in the subdivision, to a definition that only addressed roads indicated on a certain plat leading to common recreational areas. Thus, some roads, and Nettles' road in particular, that were previously considered common easements and maintained by the Homeowners' Association, no longer fell within the new definition. The amended definition, however, still applied to every lot in Ticonderoga, just as it had before. It was not directed at only one lot owner, as was the situation in *Montoya*. We affirm the Court of Appeals' analysis on this issue.

**{14}** Accordingly, Nettles is complaining not that the amended covenants are not uniform on their face, as was the case in *Montoya*, but that they are not uniform in their effects on different lot owners in the subdivision. However, Nettles cites no case, and we have found none, whereby an amendment to a covenant has been invalidated based solely on its non-

4

uniform effect. Therefore, we decline to expand this area of the law as Nettles asks.

**Uniform Amendments Must Also Be Reasonable**

**{15}** Aside from uniformity, our Court of Appeals noted that Nettles appeared to be making a reasonableness argument. *Nettles*, No. 31,342, slip op. at 4. According to the Restatement (Third) of Property: Servitudes § 6.10 cmt. f (2000), "[u]nder the rules stated in § 6.13, the association and the community members acting collectively have a duty to treat community members fairly and to exercise discretionary powers reasonably. Those duties apply to the power to amend as well. . . ."

**{16}** This Court has previously recognized the principle that covenant amendments are subject to a test of reasonableness. *See Appel v. Presley Cos.*, 111 N.M. 464, 466, 806 P.2d 1054, 1056 (1991). In *Appel*, the plaintiffs sought to enjoin certain amendments to restrictive covenants made by an architectural control committee that relieved certain lots from the restrictions. *Id.* at 465, 806 P.2d at 1055. This Court agreed that unlike in *Montoya,* "the language [of the covenants] permitted the Architectural Control Committee to make [non-uniform] amendments or exceptions to the restrictive covenant." *Id.* at 466, 806 P.2d 1056. But, this Court also noted that in addition to issues of uniformity, "courts have determined that provisions allowing amendment of subdivision restrictions are subject to a requirement of reasonableness." *Id.* Quoting from Thompson on Real Property, we noted that "[a] court of equity will not enforce restrictions where there are circumstances that render their enforcement inequitable. . . ." *Id.* (quoting 7 G. Thompson, *Real Property*, § 3171 (repl. 1962)).

**{17}** While this reasonableness requirement has not been thoroughly developed in New Mexico, the legal principle is well settled in other jurisdictions. It often contains reference to protecting the minority from unreasonable actions of the majority. For instance, the Mississippi Supreme Court described the reasonableness standard as follows:

> Applying a reasonableness standard to a regulation, this Court will consider not only the rights of the individual owner, but also the rights of the other association members who expect maintenance in keeping with the general plan. . . . The purpose of balancing these considerations is to ensure that the strength of the association is maintained and the expectations and purpose are not frustrated, while also ensuring that *no individual property owner or class of owners is unduly and unexpectedly burdened for the benefit of others in the association*.

*Griffin v. Tall Timbers Dev., Inc.*, 681 So. 2d 546, 554 (Miss. 1996) (alteration in original) (emphasis added) (internal quotation marks and citation omitted). Ohio has adopted a three-question test for determining the reasonableness of the homeowners' association. According to the Ohio Court of Appeals,

5

*The second question is whether the decision or rule is discriminatory or evenhanded.* This may sound like a 'constitutional' consideration applicable only in a case of 'state action,' but we believe it protects against the imposition by a majority of a rule or decision reasonable on its face, in a way that is unreasonable and unfair to the minority because its effect is to isolate and discriminate against the minority. It provides a safeguard against a tyranny of the majority.

*Worthinglen Condo. Unit Owners' Ass'n v. Brown*, 566 N.E.2d 1275, 1277-78 (Ohio Ct. App. 1989) (internal quotation marks and citation omitted).

**{18}** The Restatement (Third) of Property: Servitudes § 6.10 cmt. f, illus. 9, also indicates how reasonableness should be used to protect the minority from the majority. Illustration 9 sets out the general facts that the declaration in a residential subdivision allows for amendment by affirmative votes of two-thirds of the lot owners. *Id.* The illustration goes on to state that

> [t]he declaration provides that the board of directors may promulgate rules governing parking. . . . An amendment is adopted allocating all available parking to a list of units that includes units that hold two-thirds of the voting power. The owners of units holding the remaining voting power opposed the amendment. The conclusion would be justified that the amendment is invalid.

*Id.*

**{19}** Although Nettles did not clearly make a reasonableness argument as such, Nettles just as clearly articulated throughout these proceedings a claim that the majority was abusing the minority—the "tyranny of the majority"—that goes to the heart of the reasonableness inquiry. In the response to the motion for summary judgment, Nettles argued that "[t]his is the classic attempt of the majority ganging up on a minority in a subdivision setting which is precluded under New Mexico law." Nettles obviously made a similar argument to the Court of Appeals, which stated that "Plaintiffs appear to be arguing that amendments requiring a *minority* to maintain their own roads while also requiring them to help maintain roads used by the *majority* is, as a matter of law, unreasonable." *Nettles*, No. 31,342, slip op. at 4-5 (emphasis added). In briefing before this Court, Nettles argued that "[t]he amendment made to the covenants by the Majority had the clear effect of relieving burdens from the Majority while increasing them for the minority."

**{20}** Perhaps confused that *Appel* specifically dealt with non-uniform amendments and thinking that reasonableness only applied to non-uniform amendments, Nettles was less than clear in how they presented what was essentially a reasonableness argument. But this Court has never limited *Appel* to non-uniform amendments and we decline to do so now. Nonetheless, out of an abundance of caution and fairness to both sides, we asked for

6

supplemental briefing which we found helpful. The Homeowners Association took the position that the amendment was reasonable, as its purpose was for the Association to continue to maintain roads leading to common recreation areas, but stop maintaining those roads that do not. There is evidence in the record to that effect. However, there is also evidence in the record that this may not be entirely accurate. The record shows that while the claimed purpose of the amendment was to only maintain the roads that lead to the common recreational areas, the roads themselves are not maintained all the way to the common recreational areas, especially in winter.

**{21}**  The reasonableness of covenant amendments is a question of fact. *Appel*, 111 N.M. at 466, 806 P.2d at 1056. The Court of Appeals appears to have viewed the question differently—that Nettles had to prove these amendments were unreasonable as a matter of law—and the Court of Appeals was not persuaded. But this factual conflict does not represent a failure on the part of Nettles; it means only that there is more than one view of the evidence. And that, in turn, enables Nettles to at least attempt to persuade the fact finder that this amendment was not reasonable, either in its intent or its impact on minority owners. Accordingly, summary judgment must be reversed and this case remanded to the district court for further proceedings.

**Voting Rights**

**{22}**  Nettles also claims that at the same time the definition of common easement was amended, the Association's organic documents were amended in a way that diluted their voting rights. According to Nettles, voting was originally based on one vote per lot. Voting rights were then amended so that in addition to one vote per lot, members also had one vote per acre owned in the subdivision. An affirmative majority of each class of votes is now required for any proposition to pass.

**{23}**  The Association countered by arguing that "Petitioners have misread the original Articles of the Homeowners Association." According to the Association, the original Articles of the Homeowners' Association allocated votes on a per acre basis, and the amendment actually added one vote per lot, not the other way around. The Association also points out that the portion of the original Articles dealing with voting rights was never made part of the record.

**{24}**  In response, Nettles points to a portion of the record, claiming it contains the voting rights section of the original Articles of the Homeowners' Association, but Nettles is mistaken. That particular portion of the record shows the voting rights of the Ticonderoga Recreational Association, Inc., not the Ticonderoga *Homeowners'* Association, Inc. The significance of the two different associations was not explained to this Court, but a review of the record indicates they are two separate, incorporated entities.

**{25}**  The failure to put the essential document into the record means it is impossible for this Court to determine whether anyone's voting rights were actually diluted. Accordingly,

Nettles failed to create a genuine issue of material fact, and summary judgement was appropriate on this issue.

**Representations of the Developer**

{26}   Lastly, Nettles claims that Ticonderoga's developer made representations to the effect that the Boulders road would be maintained by the Homeowners' Association and that a gate would be installed at the entrance to the Boulders road. Nettles argues that such representations are binding on the Homeowners' Association, relying primarily on *Agua Fria Save the Open Space Ass'n v. Rowe*, 2011-NMCA-054, 149 N.M. 812, 255 P.3d 390, and *Knight v. City of Albuquerque*, 110 N.M. 265, 794 P.2d 739 (Ct. App. 1990).

{27}   Neither of these cases, however, holds that a developer's representations are binding on a subsequent homeowners' association. In *Agua Fria*, our Court of Appeals acknowledged that while an original developer's representations to buyers could be binding on a subsequent *developer*, there was no factual evidence to support the contention in that case. 2011-NMCA-054, ¶¶ 12-13. In *Knight*, the Court of Appeals held that "a developer will not be allowed to induce purchasers to buy property by purporting to include open space such as parks or golf courses in a subdivision plat, only to subsequently change the uses of those open space areas." 110 N.M. at 266, 794 P.2d at 740.

{28}   Thus, Nettles has failed to cite any case law, from this jurisdiction or any other, holding that a developer's representations are binding on a subsequent homeowners' association. Rather, Nettles merely argues that a developer should not be allowed to make representations to purchasers and then transfer the authority to enforce those representations to a homeowners' association "and thereby eliminate any possible enforcement of the promises." Having failed to adequately develop the argument by citing any relevant authority for this proposition, persuasive or otherwise, Nettles asks too much of this Court. Therefore, we decline to rule on the issue.

**CONCLUSION**

{29}   The decision of the Court of Appeals is reversed in part and affirmed in part. This case is hereby remanded to the district court for further proceedings consistent with this opinion.

{30}   **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Chief Justice**


_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**BARBARA J. VIGIL, Justice**

**Topic Index for** *Nettles v. Ticonderoga Owners' Ass'n, Inc.*, **No. 33,364**

**CIVIL PROCEDURE**
Summary Judgment

**PROPERTY**
Covenants
Easement
Home Owners Association
Restrictive Covenants