870 P.2d 149

Leonard POLLOCK, Laura Pollock, Judith Rogers, Fred Vargas, Mary Vargas, Maurice Griego, Javier Marcilla, Yvonne Marcilla, Bill Tivey, Cindy Tivey, and Frank Vallejos, Plaintiffs,

Arnold Padilla, Stephanie Padilla, Phil Vargas, and Virginia Vargas, Plaintiffs–Appellants,

v.

Elizabeth RAMIREZ and Lee O. Norris, Individually and d/b/a Lee's Automotive, Defendants–Appellees.

No. 14265.

Court of Appeals of New Mexico.

Jan. 27, 1994.

Arnold Padilla, Albuquerque, for plaintiffs-appellants.

R. Alfred Walker, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendants-appellees.

## OPINION

DONNELLY, Judge.

Plaintiffs appeal from a judgment dismissing their complaint which sought injunctive relief and enforcement of restrictive covenants against Defendants. We discuss: (1) whether the trial court erred in dismissing Plaintiffs' complaint for declaratory judgment, injunctive relief, and enforcement of restrictive covenants; and (2) whether the court failed to exercise its independent judgment in adopting its findings of fact and conclusions of law. We affirm.

## FACTS

David and Carol King (the Kings), owners of realty located in Corrales, New Mexico, obtained approval for the creation of the Danalla Subdivision. The Kings filed a declaration of covenants for the subdivision on June 5, 1978, with the Sandoval County Clerk; however, the copy offered for filing was not acknowledged before a notary public.

On June 2, 1978, the Kings had signed a warranty deed. On October 24, 1978, the deed from the Kings to John Garcia (Garcia) was recorded. The deed recited that the property was "[s]ubject to the lien of the Middle Rio Grande Conservancy District," and "to attached restrictions." No restrictions or covenants, however, were physically attached to the deed. A properly acknowledged copy of the covenants prepared by the Kings was refiled with the county clerk on October 24, 1978; however, this filing was made after title to the subdivision had been transferred by the Kings to Garcia.

Thereafter, on October 24, 1978, the same day Garcia recorded title to the subdivision, he, in turn, recorded an October 10, 1978, deed conveying all of his interest in the subdivision to Norco, Inc., a New Mexico corporation (Norco). The warranty deed from Garcia to Norco was silent concerning the existence of any restrictive covenants. In March 1979, Richard Norton and Carol Norton, officers of Norco, executed and filed with the Sandoval County Clerk a document entitled "Amendments to Declaration of Covenants." The amendments recited, in part, that the

undersigned, being the owners of the land described on Exhibit "A" and lots One (1) through Six (6) and Eight (8) of the Danalla Subdivision [and] the total of said lands representing the majority of the land, subject to the covenants filed at the Office of the Sandoval County Clerk, State of New Mexico on April 13, 1976 and the Amendment thereto recorded on October 24, 1978, do hereby amend said covenants and restrictions to permit the construction of single family residences on One (1) acre lots or lots having average sizes of One (1) acre.

Although the amendments to the declaration of covenants referred to certain covenants filed on April 13, 1976, the covenants sought to be enforced by Plaintiffs in their complaint in the present action were the restrictive covenants filed for record on October 24, 1978, with the Sandoval County Clerk, and the amendments to the declaration of covenants filed on March 30, 1979. Other covenants purporting to restrict the use and development of the subdivision imposed by a deed in the chain of title, dated

June 3, 1959, expired by their own terms on June 3, 1989.

On January 14, 1980, Richard Norton, vice president of Norco, executed a warranty deed on behalf of the corporation to Jose M. Ramirez and Elizabeth Ramirez, his wife, conveying Lot 1–A. The deed stated, in part, that the conveyance was *"SUBJECT TO* all patent and mineral reservations, restrictive covenants, restrictions and reservations of easements and rights-of-way of record, and all applicable zoning regulations, restrictions and requirements and all other matters of record."

Subsequent to their purchase of Lot 1–A, Elizabeth Ramirez and her late husband, Jose M. Ramirez, built a house on the property. The trial court found that, beginning in 1983, Lee O. Norris (Norris), the son of Elizabeth Ramirez, established a vehicle repair and trucking business on Lot 1–A.

On March 22, 1991, Plaintiffs filed a complaint for declaratory judgment and injunctive relief against Defendants, Elizabeth Ramirez and Norris, alleging that Defendants were violating the restrictive covenants of the subdivision by operating a commercial vehicle repair business on Lot 1–A.

Following the commencement of trial on the merits, the trial court granted Defendants' motion to dismiss Plaintiffs' complaint at the close of Plaintiffs' case. Thereafter, the trial court adopted findings of fact and conclusions of law. The trial court found, among other things, that Norris had been operating a vehicle repair business and a trucking business on Lot 1–A of the subdivision since 1983; that the Kings had previously conveyed their entire interest in the subdivision, including both the benefit and the burden of the "Declaration of Covenants," to John Garcia on June 2, 1978; and that the conveyance from the Kings to Garcia extinguished any covenants that may have previously been created against such property. The trial court also found that: "John Garcia conveyed his entire interest in the Danalla Subdivision, without any restrictions, to Norco, Inc. on October 10, 1978"; and that "Norco, Inc. did not create any restrictions on the Danalla Subdivision at any time."

## VALIDITY OF RESTRICTIVE COVENANTS

We first consider Plaintiffs' arguments that the trial court erred in dismissing their complaint for declaratory judgment, their request for injunctive relief, and request for enforcement of restrictive covenants. Plaintiffs contend that the restrictive covenants they sought to have enforced were covenants that ran with the land and were legally binding on Defendants as subsequent purchasers of Lot 1–A.

Plaintiffs argue that the trial court erred in finding that the conveyance from the Kings to Garcia was free from the restrictive covenants sought to be imposed against the subdivision by the Kings, and that the *"uncontroverted* testimony of David King was that he owned the subject property at the time that he created the covenants in question[.]" In contesting this point, Plaintiffs, however, have failed to include in their argument a summary of all of the evidence bearing upon this issue. *See* SCRA 1986, 12–213(A)(3) (Repl.1992).

Defendants point to the documentary evidence introduced at trial and contend that the attempt by the Kings to impose restrictive covenants on the subdivision was ineffective because the attempted filing of the covenants on June 5, 1978, failed to comply with the requirements of NMSA 1978, Section 14–8–4 (Repl.Pamp.1988), and the second filing of the covenants on October 24, 1978, occurred after the Kings had divested themselves of any interest in the subdivision. We agree with Defendants that the attempted recording by the Kings on June 5 and the recording on October 24 were ineffective to constitute notice of the restrictions Plaintiffs seek to impose.

Because the copy of the declaration of covenants filed on June 5, 1978, was not properly acknowledged, it did not satisfy the requirements of Section 14–8–4, which provides that written instruments *"not duly acknowledged and certified, may not be filed and recorded, nor considered of record, though so entered* [.]" (Emphasis added.) Thus, the instrument purporting to establish the subdivision covenants tendered for filing on June 5, 1978, did not comply with the

requirements of the statute and was ineffective to establish restrictive covenants against the subdivision which ran with the land. *See New Mexico Properties, Inc. v. Lennox Indus., Inc.*, 95 N.M. 64, 65, 618 P.2d 1228, 1229 (1980) (absent existence of a valid acknowledgment or compliance with statute, instrument may not be treated as recorded); *see also Patterson v. Cook*, 655 S.W.2d 955, 959 (Tenn.Ct.App.1983) (restrictive covenants on subdivision unenforceable when instrument creating covenants contained no acknowledgment and attempted recordation was invalid), *application for permission to appeal denied by supreme court* (July 25, 1983).

■ Nor do we find that the second filing of the covenants by the Kings validly imposed any restrictive covenants against the subdivision. The second copy of the declaration of covenants was filed with the Sandoval County Clerk on October 24, 1978, at 9:36 a.m. The warranty deed from the Kings to Garcia conveying all of the property in the subdivision, however, shows that the deed was filed of record on October 24, 1978, prior to the time the declaration of covenants was placed of record. The trial court adopted a finding that found: "David W. King and Carol D. King did not own the Danalla Subdivision at the time they purportedly created the 'Declaration of Covenants.'" This finding is supported by the recording data shown on the face of the instruments. *See Trahms v. Starrett*, 34 Cal.App.3d 766, 110 Cal.Rptr. 239, 242 (1973) ("grantor cannot place restrictions on land he does not own").

■ Plaintiffs argue, however, that even if the covenants are determined to have been ineffective at the time of the conveyance of the subdivision by the Kings to Garcia, nevertheless, the covenants were revived or reasserted when Norco filed its amendments to the declaration of covenants in March 1979. Based upon our review of the record, we think the trial court properly rejected this argument.

The trial court found that the deed from the Kings to Garcia merged both the benefit and the burden into a single ownership, and that any covenants that arguably may have previously been created were extinguished.

Following the conveyance of title to Garcia, he immediately transferred title to Norco. Garcia's deed to Norco omitted any reference to restrictive covenants.

As observed by 5 Richard R. Powell & Patrick J. Rohan, *The Law of Real Property* Paragraph 679[1], at 60–128 to –129 (1993): "[T]he merger or unity of ownership of both the benefited and burdened lands extinguishes the covenant, and the covenant is not revived even if the owner later sells either the previously burdened or benefited land." (Footnotes omitted.) *See also* V Restatement of Property § 555 (1944). *See generally* 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* § 271, at 829 (1965).

As observed in comment c to Restatement of Property, *supra* Section 555:

> The obligation [concerning the use of land] is not merely suspended by the coming of the benefit and the burden into the hands of one person but is extinguished for all time. Hence, the later severance of ownership will not cause it to be revived. If it or a like obligation is to exist after the severance, it must be by virtue of a new creation. [Emphasis added.]

Nothing in the amendments to the declaration of covenants indicates an express intent on the part of Norco that the filing of the instrument was intended to revive or reestablish the covenants drafted by the Kings. *Cf. Wilcox v. Timberon Protective Ass'n*, 111 N.M. 478, 483, 806 P.2d 1068, 1073 (Ct.App. 1990) (when instrument is ambiguous, it will be resolved in favor of free enjoyment of property and against the restriction), *cert. denied*, 111 N.M. 529, 807 P.2d 227 (1991). The amendments refer to a document that was never made part of the record. The amendments also refer to an amendment to that document recorded October 24, 1978. The declaration of covenants by the Kings is not designated as an amendment. We conclude that the reference in the Norco amendments is at best ambiguous. In fact, the trial court specifically found that "Norco, Inc. did not create any restrictions on ... the Subdivision *at any time*." (Emphasis added.)

Since Plaintiffs had the burden of proof to establish that Norco intended to revive or

reestablish the restrictive covenants, we think the trial court, in light of the documentary evidence introduced at trial, could reasonably determine that Plaintiffs failed to satisfy their burden of proof as to this issue. *See In re Estate of Fletcher v. Jackson,* 94 N.M. 572, 575, 613 P.2d 714, 717 (Ct.App.) (determination of whether proof requirement has been met rests with fact finder), *cert. denied,* 94 N.M. 674, 615 P.2d 991 (1980).

In arguing this issue in their brief-in-chief, Plaintiffs also assert that the trial court's finding, that Norco did not create any restrictive covenants on the subdivision, was unsupported by substantial evidence. However, as we have noted above, this argument overlooks the documentary evidence introduced at trial, fails to assess the lack of acknowledgment on the first attempted filing of the covenants, and ignores the fact that the second copy of the covenants was recorded after the deed from the Kings to Garcia had been filed. Although Plaintiffs point to evidence that they contend could support a different result, the issue on appeal is not whether the evidence might have provided the basis for a contrary result, but whether there was evidence to support the trial court's decision. *See Haaland v. Baltzley,* 110 N.M. 585, 588, 798 P.2d 186, 189 (1990).

■ Plaintiffs further argue that Norco's act in filing the "Amendments to Declaration of Covenants" was effective to give Defendants actual and constructive notice of the covenants, or to place Defendants under a duty of inquiry. As we understand this argument, Plaintiffs contend that the trial court erred in refusing to enforce the covenants because even if the court properly concluded that they failed to establish the existence of real covenants at law, nevertheless, the court erred in failing to find that *implied equitable restrictions* or *equitable servitudes* had been created by the Kings or Norco. Implied equitable restrictions or equitable servitudes, as they are sometimes referred to, may be enforced, even though the equitable servitudes fail to satisfy all the requirements of common-law real covenants running with the land. *See B.C.E. Dev., Inc. v. Smith,* 215 Cal.App.3d 1142, 264 Cal.Rptr. 55, 57 (1989); *Ebbe v. Senior Estates Golf & Country Club,*

61 Or.App. 398, 657 P.2d 696, 709 (1983). *See generally* Maurice T. Brunner, Annotation, *Comment Note.—Who May Enforce Restrictive Covenant or Agreement as to Use of Real Property,* 51 A.L.R.3d 556, 562 (1973).

■ In order to establish the existence of equitable servitudes, a party must show that: (1) the equitable servitudes touch and concern the land; (2) the original covenanting parties intended the equitable servitudes to run; and (3) the successor to the burden had notice of the equitable servitudes. *Cf. Lex Pro Corp. v. Snyder Enters., Inc.,* 100 N.M. 389, 391, 671 P.2d 637, 639 (1983) (delineating requirements for creating restrictive covenants enforceable in equity); *see also Ebbe,* 657 P.2d at 700 (discussing test for determining existence of equitable servitudes). *See generally* 5 Powell & Rohan, *supra* ¶ 671, at 60–15; William B. Stoebuck, *Running Covenants: An Analytical Primer,* 52 Wash. L.Rev. 861, 887 (1977).

■ The trial court adopted findings that expressly determined that Defendants did not have actual, constructive, or inquiry notice of the existence of the covenants in question. "Actual notice" refers to information that was communicated directly to or received by a party. *Leche v. Ponca City Prod. Credit Ass'n,* 478 P.2d 347, 351 (Okla. 1970). Plaintiffs have not cited to any testimony or evidence in the record indicating that either the Ramirezes or Norris received *actual notice* of the content of the covenants attempted to be imposed by the Kings. In contrast with this omission, Defendants note that Elizabeth Ramirez expressly denied that she had actual notice of the covenants in question when she and her husband purchased their property.

The record also supports the trial court's finding that Plaintiffs failed to prove that Defendants had *constructive notice* of the existence of the covenants. Because we have determined that the covenants sought to be imposed by the Kings did not comply with the requirements of Section 14–8–4, and that the covenants were recorded subsequent to the conveyance by the Kings to Garcia, we do not believe constructive notice of the existence of valid covenants can properly be im-

plied. *See Patterson*, 655 S.W.2d at 959 (invalidly recorded instrument does not constitute constructive notice). *See generally* Stoebuck, *supra* § 6, at 898.

Nor do we agree with Plaintiffs that the trial court had to find that Defendants were placed on *inquiry notice*. Purchasers of property have been held to be placed on "inquiry notice" where, at the time of their purchase, the land in question exhibits a uniform appearance, and the property, along with the buildings or other structures thereon, evidence a general plan or common scheme of development, sufficient to place the purchasers upon notice of the plan or scheme. *See Shalimar Ass'n v. D.O.C. Enters., Ltd.*, 142 Ariz. 36, 688 P.2d 682, 690 (Ct.App.), *review denied* (Sept. 18, 1984); *Weber v. Les Petite Academies*, 548 S.W.2d 847, 853 (Mo.Ct.App.1976); *see also Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.*, 83 N.M. 558, 560, 494 P.2d 971, 973 (1972) (recognizing implied restrictive covenants); *Plumb v. Ruffin*, 213 Neb. 335, 328 N.W.2d 792, 795 (1983) (recognizing right of equitable enforcement of land use restrictions where grantee shown to have taken with notice of restrictions). *See generally* 5 Powell & Rohan, *supra* ¶ 673[3], at 60–82.

■ Whether parties have been placed on notice is a question of fact. *See Smith v. State ex rel. New Mexico Dep't of Parks & Recreation*, 106 N.M. 368, 371, 743 P.2d 124, 127 (Ct.App.1987). In the instant case the record reflects that the Ramirezes purchased Lot 1–A on January 14, 1980, and they were the first purchasers to build a house in the subdivision. Under these circumstances, the trial court could reasonably determine that the evidence was insufficient to place Defendants on inquiry notice. In sum, the record supports the trial court's determination that Defendants did not have the requisite notice to establish the existence of equitable servitudes on their property. *See* William E. Burby, *Real Property* ch. 9, § 41, at 105 (3d ed. 1965) (equitable servitudes cannot be enforced against bona fide purchaser for value without notice).

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

■ The trial court adopted findings of fact and conclusions of law that were virtually the same as those submitted by Defendants. Plaintiffs contend that the trial court abdicated its judicial responsibility by adopting all of Defendants' requested findings and conclusions. We agree with Plaintiffs that the trial court is required to exercise independent judgment in arriving at its decision and should generally avoid verbatim adoption of all of the findings and conclusions submitted by a party. *See Coulter v. Stewart*, 97 N.M. 616, 617, 642 P.2d 602, 603 (1982); *In re Hamilton*, 97 N.M. 111, 114, 637 P.2d 542, 545 (1981). Here, however, viewing the judgment entered by the trial court in light of the evidence adduced at trial, we do not believe that the judgment entered below is subject to reversal. The adoption of verbatim findings does not constitute reversible error if the trial court's findings are supported by proper evidence in the record. *Coulter*, 97 N.M. at 617, 642 P.2d at 603; *In re Hamilton*, 97 N.M. at 114, 637 P.2d at 545.

We have examined each of the arguments raised by Plaintiffs concerning their action for injunctive relief and enforcement of covenants, and conclude that Plaintiffs have failed to establish any error in the judgment entered below.

*CONCLUSION*

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and BIVINS, J., concur.