**Certiorari Denied, January 3, 2011, No. 32,718**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-010**

**Filing Date: October 27, 2010**

**Docket No. 28,836**

**ROBERT DUNNING, MICHELLE
DUNNING, DON MARVEL, BARBARA
HAU, RICHARD GOLDMAN, USUN
GOLDMAN, LARRY WALL, BETSY
WALL, JOHN KERN, LOUISE KERN,
JOHN CULLINAN AND THE JEANNE
C. COMPTON TRUST,**

       **Plaintiffs-Appellants,**

**v.**

**NANCY BUENDING and
PENOBSCOT DEVELOPMENT
CO., a New Mexico corporation,**

       **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Sam B. Sanchez, District Judge**

Natelson Law Firm
Jacob D. Caldwell
Taos, NM

for Appellants

Carol A. Neelley, P.C.
Carol A. Neelley
Taos, NM

for Appellee

**OPINION**

**FRY, Chief Judge.**

**{1}** Plaintiffs, the owners of nine lots in the Eastern Nighthawk Trail area of a subdivision near Taos, New Mexico, appeal the district court's entry of summary judgment in favor of Defendant Nancy Buending, the owner of one lot in the same area. Plaintiffs filed suit against Defendant for declaratory judgment, seeking enforcement of a restriction allegedly prohibiting Defendant from subdividing her property. Defendant filed a motion for summary judgment, arguing that the restriction was unenforceable because Defendant had no notice of the existence of a common development scheme at the time she purchased her property. The district court granted summary judgment in Defendant's favor, and Plaintiffs appeal. We reverse.

**BACKGROUND**

**{2}** In 1988, Edmund Lary formed two corporations, Penobscot Development Company (Penobscot) and Cumberland Land Corporation (Cumberland), to own, divide, and sell a 123-acre tract of property in Taos County, New Mexico. Lary was the president and owner of both corporations. Through the two companies, Lary acquired the majority of the 123-acre tract. Within the 123 acres was a 37.875-acre tract on the eastern side of Nighthawk Trail, which the parties refer to as the Eastern Nighthawk Trail tract (the Tract). Individually and through his two corporations, Lary then divided the 37.875 acres into thirteen individual lots. Of the thirteen lots, Penobscot and Lary each owned four and Cumberland owned five. The entire 123-acre tract was governed by a declaration of covenants (the Restriction) recorded on July 15, 1988, that, among other things, provided that "no lot may be subdivided into less than one acre."

**{3}** In 1989, Defendant purchased a 4.2-acre lot in the Tract from Penobscot. According to Defendant, when she entered into the purchase agreement for her property, the real estate agent told her that she would be able to subdivide her 4.2-acre lot into one-acre parcels, and she received written restrictions that reflected her ability to subdivide. After closing, however, Defendant received a deed to the property in the mail that contained a restriction prohibiting all subdivision. The warranty deed provided to Defendant stated that it was "[s]ubject to patent reservations, restrictions, easements, mineral rights, and water rights of record, if any, except that the restrictions attached hereto as Exhibit B are substituted for those of record." Contrary to the recorded Restriction, the restrictions attached to the deed provided that "[n]o lot may be subdivided." According to Defendant, she called her real estate agent to express her dismay and was told that the restriction in the deed "meant [that she] would be able to subdivide if [she] lived on the property for more than three years." Defendant also attested that she visited the property three times prior to purchasing it and that none of the surrounding land had any improvements by which she could have inferred that there was a plan for restriction other than the one-acre subdivision limitation contained in the Restriction.

2

**{4}** According to the affidavit of one of Plaintiffs' witnesses, Lary had expressed a desire to prohibit subdivision in the Tract because he wanted to limit the density of construction in that area due to the enhanced desirability of those lots. Of the thirteen lots in the Tract, two comprised less than two acres each and thus, they could not be subdivided further due to the one-acre subdivision limitation contained in the Restriction. The deeds to three lots sold in 1989, including Defendant's, contained the restriction that expressly prohibited all subdivision. The remaining lots were all sold after Lary's death in 1990, and the deeds to those lots did not contain express restrictions against subdivision. However, subsequent purchasers of lots in the Tract were informed prior to their purchases that they could not subdivide their properties and received copies of restrictions that reflected the prohibition on all subdivision.

**{5}** In 2000, Defendant sought and obtained a "corrected" warranty deed from Penobscot that purported to revert the restrictions imposed by Defendant's initial deed back to the Restriction of record, thereby allowing Defendant to subdivide her property into separate parcels as long as each parcel was at least one acre. Plaintiffs filed suit seeking either to invalidate the corrected warranty deed or to reform the corrected deed and obtain a judicial declaration that Defendant is bound by the prohibition against subdivision contained in her initial deed. Plaintiffs alleged that the restriction in Defendant's initial deed was intended to benefit the properties adjoining and surrounding her lot and that the Plaintiffs relied on the existence of the restrictions when they purchased property in the area. Plaintiffs contended they were told that this restriction applied to all of the lots in the Tract and prohibited any subdivision.

**{6}** Defendant filed a motion for summary judgment, arguing that Plaintiffs were seeking to enforce an implied restriction that existed solely by virtue of a common plan of development and that she did not have actual or constructive notice of the plan. Defendant contended that the only restriction in place at the time she purchased her property was the Restriction's prohibition on dividing lots into parcels smaller than one acre and that there were no facts or circumstances putting Defendant on notice that there was a common plan to completely prohibit subdivision. In response, Plaintiffs argued that they were seeking to enforce the express covenant attached to Defendant's deed, not an implied covenant stemming from a common plan. Following a hearing, the district court concluded that there were no issues of material fact and that Defendant was entitled to a judgment as a matter of law. The court entered summary judgment in favor of Defendant, and this appeal ensued.

**DISCUSSION**

**Standard of Review**

**{7}** We review a district court's decision to grant summary judgment de novo. *Maestas v. Zager*, 2007-NMSC-003, ¶ 8, 141 N.M. 154, 152 P.3d 141. In doing so, we view the facts in the light most favorable to the non-moving party and indulge all reasonable inferences in support of a trial on the merits. *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 12, 135

N.M. 539, 91 P.3d 58. Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.*

**The Parties' Arguments**

**{8}** Defendant argues that summary judgment was appropriate because Plaintiffs failed to show that there was a common development plan in existence at the time she purchased her property that would have put her on notice of the restriction prohibiting subdivision. Plaintiffs argue that summary judgment was improper because Defendant failed to make a prima facie case for summary judgment. Specifically, Plaintiffs contend that there are genuine issues of material fact regarding whether the restriction in Defendant's deed was intended to run with the land such that they are entitled to enforce it. Plaintiffs argue that the fact that Defendant was not aware of any neighborhood characteristics evidencing a common scheme or plan is irrelevant because Defendant had actual notice of the restriction on her property.

**Servitudes versus Covenants**

**{9}** As one commentator has aptly noted, "[t]he law of easements, real covenants, and equitable servitudes is the most complex and archaic body of American property law remaining in the twentieth century." Susan F. French, *Toward a Modern Law of Servitudes: Reweaving the Ancient Strands*, 55 S. Cal. L. Rev. 1261, 1261 (1982). Because of this complexity, we begin our analysis of Plaintiffs' appeal by attempting to clarify the law of restrictive covenants and equitable servitudes in New Mexico. Plaintiffs sued Defendant to enforce the covenant contained in Defendant's deed. The law relied on by both parties appears to use the terms "equitable servitude" and "restrictive covenant" interchangeably. *See, e.g.*, *Lex Pro Corp. v. Snyder Enters., Inc.*, 100 N.M. 389, 390-91, 671 P.2d 637, 638-39 (1983) (using the test for an equitable servitude to determine when "a restrictive covenant [runs] in equity" and holding that the language created a restrictive covenant binding on the defendant); *Sharts v. Walters*, 107 N.M. 414, 416, 759 P.2d 201, 203 (Ct. App. 1988) (noting that the doctrine of implied reciprocal negative servitudes is also referred to as implied restrictive covenants or equitable servitudes).

**{10}** Fortunately, the Restatement (Third) of Property: Servitudes recently clarified that "[h]istorically, there were significant differences between real covenants and equitable servitudes" because the former were enforceable only at law and the latter only in equity. Restatement (Third) of Property: Servitudes § 1.4, cmt. a (2000). The Restatement explains that under modern law, "the differences between the two were gradually reduced to the point where they made little difference in the world of land development" and concludes that "[b]ecause continued use of the terms 'real covenant' and 'equitable servitude' perpetuates the idea that there is a difference between covenants at law and in equity," those terms should be abandoned in favor of the more accurate term, "covenant running with [the] land." *Id.* (internal quotation marks omitted). Because we see no practical distinction in our case

4

law between equitable servitudes and restrictive covenants that would necessitate the continued use of separate terms, *see Lex Pro*, 100 N.M. at 390-91, 671 P.2d at 638-39, we adopt the reasoning of the Restatement and conclude that the term "covenant running with [the] land" is a more accurate description of these restrictions on the use of property. Consequently, this appeal centers on whether the restrictions attached to Defendant's initial deed created an enforceable covenant running with the land.

**{11}** New Mexico case law sets out the following requirements to establish an enforceable covenant running with the land: "(1) the covenant must touch and concern the land[,] (2) the original covenanting parties must intend the covenant to run [with the land,] and (3) the successor to the burden must have notice of the covenant." *Id.* at 391, 671 P.2d at 639. The Restatement appears to have abandoned the first and third requirements for a variety of reasons. *See* Restatement (Third) of Property: Servitudes § 1.4, cmt. a (noting that "[t]he notice requirement of equity was never significant in American law because constructive notice given by a recorded instrument met the requirement, and the recording acts protected bona fide purchasers without notice"); Restatement (Third) of Property: Servitudes § 3.2 (2000) (stating that "[n]either the burden nor the benefit of a covenant is required to touch or concern land in order for the covenant to be valid as a servitude"). However, because our Supreme Court has not formally rejected the requirements set out in *Lex Pro*, we analyze the evidence in this case in accordance with those requirements. *See Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (explaining that the Court of Appeals is bound by Supreme Court precedent).

**Defendant Failed to Make a Prima Facie Showing Entitling Her to Summary Judgment on Two Elements of a Covenant Running with the Land, and Plaintiffs Established Material Issues of Fact on the Third Element**

**{12}** Having established the elements of a covenant running with the land, we consider whether summary judgment in favor of Defendant was appropriate. Plaintiffs argue that Defendant failed to make a prima facie showing entitling her to summary judgment because she "obfuscated the legal issue" central to the case. In the district court and on appeal, Defendant relies exclusively on the contention that she could subdivide her lot if she established that there was no general plan of development of which she had notice that would give rise to an implied non-subdivision restriction. We conclude that this contention begs the question of whether the restriction in Defendant's initial deed constituted a covenant running with the land.

**{13}** The existence of a general plan of development can be relevant to the determination of whether an enforceable covenant running with the land exists in three ways. First, a general development plan can be used to prove that the covenanting parties intended a covenant to run with the land. *See Rowe v. May*, 44 N.M. 264, 272, 101 P.2d 391, 396 (1940) (noting that the inclusion of identical language in all deeds in an area expressed the grantor's intention that the restriction was for the benefit of all lots in the area). Second, the existence of a common development plan can be used to prove that a purchaser had notice

of the covenant. *Pollock v. Ramirez*, 117 N.M. 187, 192, 870 P.2d 149, 154 (Ct. App. 1994) (explaining that, in the absence of actual notice, if "the land in question exhibits a uniform appearance, and the property, along with the buildings or other structures thereon, evidence a general plan or common scheme of development, sufficient to place the purchasers upon notice of the plan or scheme," the purchaser is on inquiry notice of the existence of the restrictions). Third, the existence of a common development plan can be used to impose restrictions on parcels of land in a common development even if the restrictions have been omitted from the deeds of the property against which a party seeks to enforce the restrictions. *See Sharts*, 107 N.M. at 417, 759 P.2d at 204.

**{14}** While the existence of a common development plan can be used to determine whether a covenant is enforceable and whether a restriction applies to property in a subdivision that is not expressly restricted, a covenant running with the land "does not require a common scheme or plan." *Cypress Gardens, Ltd. v. Platt*, 1998-NMCA-007, ¶ 15, 124 N.M. 472, 952 P.2d 467. Instead, as we have explained, the covenant will be enforceable if the covenant touches and concerns the land, if the original parties intended the covenant to run with the land, and if the successor to the burden is on notice of the covenant. *Lex Pro*, 100 N.M. at 391, 671 P.2d at 639 (analyzing whether a restriction was intended to run with the land without considering whether a common plan or scheme existed). Once the three requirements have been met, a covenant may be enforced against the party who bears the burden of the covenant by the party who receives the benefit of the burden. *See Rowe*, 44 N.M. at 267, 101 P.2d at 393 (noting that surrounding property owners may enforce a covenant if it runs within the land for the benefit of all property owners with a restricted area).

**{15}** Consequently, in order to establish her entitlement to summary judgment, Defendant had to make a prima facie showing that one of the three requirements of an enforceable covenant running with the land was absent. We conclude that either Defendant failed to make such a showing or Plaintiffs raised genuine issues of material fact.

**First Requirement: That the Covenant Touches and Concerns the Land**

**{16}** With respect to the first element, determining whether the covenant touches and concerns the land requires an objective analysis that focuses on the contents of the covenant itself. *Cypress Gardens, Ltd.*, 1998-NMCA-007, ¶ 8. A burden touches and concerns the land if its performance renders the covenantor's interest in the land less valuable while rendering the covenantee's interest in the land more valuable. *Lex Pro*, 100 N.M. at 391, 671 P.2d at 639. The restriction in Defendant's initial deed by its express terms placed a burden on Defendant's interest in her property while placing a benefit on Plaintiffs' interest in their property. Defendant's property is burdened by the restriction prohibiting subdivision, and Plaintiffs are benefitted by being able to enjoy a lower density of construction in their area. Defendant's evidence established only that she did not see anything in the area surrounding her lot suggesting that there was a general plan limiting

subdivision other than the one contained in the Restriction.  However, this absence of an observable general plan does not negate the express language in the initial deed.

{17}    Although Defendant's arguments lack clarity, she appears to contend that the only written restriction on the use of her property was that contained in the Restriction and that she can ignore the covenant included in her initial deed because of the contrary representations made by her real estate agent prior to the delivery of the deed, to the effect that Defendant would be allowed to subdivide her lot into one-acre parcels.  We fail to understand this contention, especially given the established law that "[t]hough the terms of [a] deed may vary from those contained in the contract [to convey], the deed alone must be looked to to determine the rights of the parties." *Norment v. Turley*, 24 N.M. 526, 529, 174 P. 999, 1000 (1918).  In our view, Defendant failed to make a prima facie showing that the covenant in the deed did not touch and concern the land.

**Second Requirement:  That the Parties Intended the Covenant to Run with the Land**

{18}    In assessing the second requirement, because the deed does not specify that the covenant is to run with the land, we consider "the circumstances surrounding the transaction and the object of the parties in making the restriction." *Lex Pro*, 100 N.M. at 391, 671 P.2d at 639.  This requires us to consider whether both the burden and the benefit of the covenant were intended to run with the land.  *Id.*  Defendant made a prima facie showing that the grantor may not have intended the benefit of the covenant to run with the land because all of the deeds to property in the Tract did not contain the language Plaintiffs were seeking to enforce.  *Cf. Rowe*, 44 N.M. at 272, 101 P.2d at 396 (noting that the inclusion of identical language in all deeds in an area expressed the grantor's intention that the covenant was for the benefit of all lots in the area).

{19}    However, Plaintiffs presented evidence raising a question of fact on this element. Specifically, Plaintiffs provided evidence that identical restrictions were placed in the deeds to some of the lots surrounding Defendant's lot and that purchasers whose deeds did not contain the express restriction were told that they were prohibited from subdividing. Further, Plaintiffs presented evidence that Lary had expressly stated that he wanted the Tract to be bound by a restriction against subdivision because of the unique layout of the land in that area and his desire to limit the density there.  This evidence raises a question of fact regarding whether the grantor's intent was to create a covenant running with the land.

**Third Requirement:  That Defendant Had Notice**

{20}    Finally, with respect to the third requirement, notice, Defendant's primary argument on appeal is that Plaintiffs failed to produce evidence that she had knowledge of a common development plan at the time she purchased her property.  Defendant contends that knowledge of the plan is the "*sin[e] qua non* for enforcement of a 'common plan.'" Contrary to Defendant's argument, however, "[w]hen a party has actual notice, there is no legal need to imply notice from the existence of a common scheme or plan." *Cypress*

7

*Gardens, Ltd.*, 1998-NMCA-007, ¶ 15. Thus, if Defendant had actual knowledge of the covenant, it is irrelevant that the characteristics of the neighborhood did not alert her to the fact that she was prohibited from subdividing her property.

**{21}** Defendant acknowledges that the deed she received contained an express restriction on her ability to subdivide her property. Despite this acknowledgment, Defendant argues that she did not have actual notice of the restriction because her real estate agent told her prior to the purchase that she could subdivide as long as the ensuing parcels were not less than one acre each.

**{22}** As previously noted, "[t]hough the terms of the deed may vary from those contained in the contract, the deed alone must be looked to to determine the rights of the parties." *Norment*, 24 N.M. at 529, 174 P. at 1000. Because the deed Defendant accepted expressly stated that she was prohibited from subdividing her property, Plaintiffs had a factual basis for arguing that Defendant had actual notice of the covenant, despite her agent's oral representations. As a result, Defendant failed to make a prima facie showing that she did not have notice.

**CONCLUSION**

**{23}** For the foregoing reasons, we reverse summary judgment in favor of Defendant and remand for proceedings consistent with this opinion.

**{24}   IT IS SO ORDERED.**

                                _____

                                  **CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Dunning v. Buending*, Docket No. 28,836**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **PR** | **PROPERTY** |
| PR-CN | Covenants |
| PR-DD | Deed |

PR-NO            Notice
PR-RC            Restrictive Covenants
PR-SU            Subdivisions