IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-015

Filing Date: May 12, 2014

Docket No. 34,083

AMETHYST LAND CO., INC.,
a New Mexico Corporation,

       Plaintiff-Respondent,

v.

JAMES F. TERHUNE and ELIZABETH
R. TERHUNE,

       Defendants-Petitioners.

ORIGINAL PROCEEDING ON CERTIORARI
Barbara J. Vigil, District Judge

Clifford C. Gramer, Jr.
Albuquerque, NM

for Petitioners

O'Friel and Levy, P.C.
Aimee S. Bevan
Santa Fe, NM

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Respondent

OPINION

CHÁVEZ, Justice.

{1}    This case involves a dispute between two adjoining landowners over an easement. In 2003, Respondent Amethyst Land Company (Amethyst) acquired a quitclaim deed to an

1

undeveloped twenty-two-acre parcel (the 22-acre parcel) in the Santa Fe foothills. Amethyst promptly searched the county property record and incorporated all of the documents concerning the property into corrected deeds. One of the documents it found and incorporated in the corrected deeds was an Extinguishment Agreement purporting to terminate an easement on Tract 3 of adjoining property that benefitted the 22-acre parcel. Amethyst's neighbors, Petitioners James and Elizabeth Terhune (the Terhunes), recorded the Extinguishment Agreement two years earlier, but five days after Amethyst's predecessor-in-interest recorded its deed to the 22-acre parcel. The Terhunes denied Amethyst use of the easement, and Amethyst sued to quiet title. The district court found for the Terhunes. The Court of Appeals reversed, holding that the Extinguishment Agreement was invalid because it was filed late and the corrected deeds did not revive the agreement. *Amethyst Land Co. v. Terhune*, 2013-NMCA-059, ¶ 32, 304 P.3d 434. We hold that the Extinguishment Agreement was valid and that by correcting its deeds, Amethyst incorporated the Extinguishment Agreement in full. Therefore, we reverse the Court of Appeals.

**BACKGROUND**

**{2}**     The easement in question has benefitted the 22-acre parcel since 1979, when it was reserved in a deed for sixty acres of land as a "non-exclusive easement retained by [the] Grantors . . . for utilities and right-of-way." The purchasers of the sixty acres then subdivided the land, creating parcels including the five-acre parcel now owned by the Terhunes, which is known as Tract 3. Tract 3 lies directly to the north of the 22-acre parcel, and was historically burdened by the final stretch of the easement in favor of the 22-acre parcel.

**{3}**     In 1983, Keith MacDuffee (MacDuffee) purchased the 22-acre parcel and the appurtenant easement across Tract 3 from the original grantors. That same year, MacDuffee also purchased Tract 3, which was burdened by the easement in favor of the 22-acre parcel.[1]

**{4}**     In 2001, MacDuffee started selling his properties in the Santa Fe foothills, apparently

---

[1]Although MacDuffee's simultaneous ownership of both Tract 3 and the 22-acre parcel destroyed the easement under the doctrine of termination by merger, the parties stipulated in district court that the easement burdened Tract 3 at the time of the Terhunes' purchase. Thus, we follow the law of the case on this issue. In so doing, however, this Court does not reject the doctrine of termination by merger, which provides that once a dominant and servient estate come under common ownership, the easement is extinguished as a matter of law. *Michelet v. Cole*, 1915-NMSC-044, ¶¶ 4-6, 20 N.M. 357, 149 P. 310; Restatement (Third) of Property: Servitudes § 7.5 (2000) ("A servitude is terminated when all the benefits and burdens come into a single ownership. Transfer of a previously benefit[t]ed or burdened parcel into separate ownership does not revive a servitude terminated under the rule of this section. Revival requires re-creation."). The doctrine of termination by merger is still the law of New Mexico.

2

in a lead up to bankruptcy. On February 16, 2001, MacDuffee signed the deed for Tract 3 to the Terhunes, an Aurora, Colorado couple who wanted to relocate to Santa Fe and build a home. A survey of Tract 3 made for the Terhunes indicated the property was burdened by two easements.[2] The Terhunes refused to purchase the land unless MacDuffee extinguished the easement benefitting the 22-acre parcel because their lawyer advised them that the still-undeveloped 22-acre parcel could be subdivided and developed, and traffic over the easement could significantly increase.

**{5}**     On March 5, 2001,[3] MacDuffee signed and notarized an Extinguishment Agreement terminating the easement. The Extinguishment Agreement stated "the parties hereby extinguish [the] easement . . . [burdening] the Terhune Plat," and the agreement "shall run with the land." The agreement also stated it would be effective "upon recordation in the records of Santa Fe County, New Mexico." Two days later, on March 7, the Terhunes recorded the deed to Tract 3, which still described the land as burdened by the easement. They did not record the Extinguishment Agreement. On March 12, the Terhunes' attorney sent a letter and a copy of the Extinguishment Agreement to the Terhunes at their home in Aurora, asking them to return the agreement with their notarized signatures. They did so, and their attorney recorded it in Santa Fe County on April 30.

**{6}**     Unbeknownst to the Terhunes, MacDuffee was in dire financial straits and was also looking for a buyer for the 22-acre parcel while he was negotiating with them over the sale of Tract 3. The problem for the Terhunes was that five days before they recorded the Extinguishment Agreement, a development corporation, Desert Sunrise, recorded its purchase of MacDuffee's 22-acre parcel. Just as the Terhunes did not know about MacDuffee's plan to sell the 22-acre parcel, Desert Sunrise did not know that MacDuffee had signed an Extinguishment Agreement with the Terhunes. MacDuffee gave the general partner of Desert Sunrise the impression that the easement across Tract 3 granted access to the 22-acre parcel because MacDuffee "told [him] where to go up the road," but never specifically told him that the easement provided legal ingress and egress. On April 25, 2001, Desert Sunrise recorded the deed to the 22-acre parcel, which made no mention of the easement. Two years later, Desert Sunrise conveyed the 22-acre parcel to Amethyst by a quitclaim deed that was recorded on April 30, 2003. At the insistence of Amethyst, corrected

---

[2]The other easement across Tract 3 was created by a separate instrument in 1981. That easement is expressly limited to use by two other properties (known as Tracts 1 and 2), and not the 22-acre parcel. Both the district court and the Court of Appeals held that the 1981 easement did not benefit the 22-acre parcel. *Amethyst*, 2013-NMCA-059, ¶ 31. Amethyst does not challenge those rulings in this Court.

[3]The date on the form reads "March 5, 2000," but the year appears to be a clerical error. Neither party argues before this Court that MacDuffee signed the agreement one year before the Terhunes. The Court of Appeals noted that the date was probably an error. *Amethyst*, 2013-NMCA-059, ¶ 7 n.1.

3

deeds between MacDuffee and Desert Sunrise and Desert Sunrise and Amethyst incorporated by reference the Extinguishment Agreement.

**{7}** Three years after Amethyst bought the property it sued the Terhunes, alleging that the Terhunes had placed a chain across the easement, effectively preventing Amethyst from accessing the 22-acre parcel. Amethyst sought a declaration that the Extinguishment Agreement was of no force and effect. After a hearing on the merits, the district court entered judgment for the Terhunes, finding that the Extinguishment Agreement was valid and effective, and Amethyst was equitably estopped from denying the extinguishment because it had incorporated the agreement into its deeds.

**{8}** The Court of Appeals reversed, holding that the Extinguishment Agreement was invalid and ineffective. *Amethyst*, 2013-NMCA-059, ¶ 23. The Court of Appeals determined that Amethyst was not equitably estopped from denying the extinguishment of the easement by correcting the deeds. *Id.* ¶ 25. We granted certiorari.

**STANDARD OF REVIEW**

**{9}** This case presents no factual dispute. We review legal conclusions de novo. *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 20, 145 N.M. 769, 205 P.3d 816.

**DISCUSSION**

**A.      The Extinguishment Agreement was valid when recorded**

**{10}** All writings affecting the title to real estate must be recorded. NMSA1978, § 14-9-1 (1991) ("All deeds, mortgages, . . . and other writings affecting the title to real estate shall be recorded in the office of the county clerk of the county . . . in which the real estate affected thereby is situated."). As instruments affecting the title to real estate, extinguishment agreements are also subject to the recording statutes, NMSA 1978, §§ 14-9-1 to -9 (1886-87, as amended through 1991). "In order to be effectual, [an extinguishment agreement] must be executed with the same formalities as are generally required in making transfers of interest in land." *Sedillo Title Guar., Inc. v. Wagner*, 1969-NMSC-087, ¶ 18, 80 N.M. 429, 457 P.2d 361. Here the Extinguishment Agreement was executed with the same formalities as other instruments transferring an interest in land: it was written, signed by both parties, notarized, and described with particularity the land and the interest it intended to affect. *See* NMSA 1978, § 14-8-4(A) (2013) ("Any instrument of writing duly acknowledged may be filed and recorded."); 14 Richard R. Powell, *Powell on Real Property* § 81A.02[2], at 17-18 (Michael Allan Wolf, ed., 2014) (listing requirements of the Statute of Frauds).

**{11}** The Court of Appeals held that the Extinguishment Agreement was not valid because it "was extinguished under Section 14-9-3 by Desert Sunrise's good faith purchaser status." *Amethyst*, 2013-NMCA-059, ¶ 19. Section 14-9-3 deals with the effect of unrecorded instruments, providing, "[n]o deed, mortgage or other instrument in writing not recorded in

4

accordance with Section 14-9-1 . . . shall affect the title or rights to, in any real estate, of any purchaser . . . in good faith . . . without knowledge of the existence of such unrecorded instruments." Section 14-9-3. Generally, noncompliance with the recording statutes does not affect the validity of the instrument itself, but makes it ineffectual as constructive notice. *See* § 14-9-2 (stating records serve "notice to all the world of the existence and contents of the instruments so recorded from the time of recording."); *Baker v. Baker*, 1977-NMSC-006, ¶ 4 n.1, 90 N.M. 38, 559 P.2d 415 (holding that noncompliance with statutory requirement that deeds be notarized does not make the deed void, but merely makes it ineligible to be recorded; "[t]he general rule is that an unacknowledged deed is binding between the parties thereto, their heirs and representatives, and persons having actual notice of the instrument."); *Ames v. Robert*, 1913-NMSC-021, ¶ 6, 17 N.M. 609, 131 P. 994 ("A deed of land, though not recorded, is good as between grantor and grantee." (internal quotation marks and citation omitted)).

**{12}**     Section 14-9-3 did not extinguish or otherwise invalidate the Extinguishment Agreement between MacDuffee and the Terhunes. On the contrary, our "statutes . . . are clear. There is no requirement that an instrument be recorded within a particular period of time. The order in which deeds appear on the record is not important in a notice jurisdiction." *Angle v. Slayton*, 1985-NMSC-032, ¶ 10, 102 N.M. 521, 697 P.2d 940. The effect of Section 14-9-3 was to protect the property interests of Desert Sunrise as a good faith purchaser because Desert Sunrise purchased the 22-acre parcel and recorded its deed before the Extinguishment Agreement was recorded. Although the Extinguishment Agreement was not enforceable against Desert Sunrise, the agreement remained valid as between MacDuffee and the Terhunes because it was executed with all of the same formalities as other transfers of interest in land. Once the Terhunes recorded the Extinguishment Agreement, they "did all that was required by statute to protect [their] interest." *Angle*, 1985-NMSC-032, ¶ 9.

**{13}**     The Court of Appeals also concluded that the Extinguishment Agreement was invalid because "the MacDuffees no longer owned the 22-acre parcel on the recording date and consequently had no legal authority to release an easement on property that they no longer owned." *Amethyst*, 2013-NMCA-059, ¶ 22. The Court of Appeals cited *Pollock v. Ramirez*, 1994-NMCA-011, 117 N.M. 187, 870 P.2d 149, to support its rationale. *Amethyst*, 2013-NMCA-059, ¶ 22. In *Pollock*, the original grantors purported to create restrictive covenants after having signed a warranty deed which did not contain restrictions. 1994-NMCA-011, ¶¶ 3, 12, 14. In this case, MacDuffee had a legal right to extinguish his interest in the easement on Tract 3 because at the time he conveyed Tract 3 to the Terhunes he was the legal owner of the 22-acre parcel which was to benefit from the easement on Tract 3.

**{14}**     Although MacDuffee signed the Extinguishment Agreement when he had legal authority to do so, the agreement provided that it would become "effective upon recordation in the records of Santa Fe County, New Mexico." The Court of Appeals interpreted this language to control the legal effect of the document, and to mean that the document had no legal effect until it was recorded. *Amethyst*, 2013-NMCA-059, ¶ 22 (noting that "on the date

5

the Extinguishment Agreement was recorded, the MacDuffees no longer owned the 22-acre parcel and had no authority to extinguish easements benefitting that property").

**{15}** We disagree with the Court of Appeals because language regarding the effective date of a deed does not change the character of the deed. *Vigil v. Sandoval*, 1987-NMCA-101, ¶ 7, 106 N.M. 233, 741 P.2d 836. In *Vigil*, the grantor signed a warranty deed to her grandson conveying certain property to him to "become effective only upon the death of Grantor only. If grantor survives grantee this instrument will be void." *Id.* ¶ 2. After the grantor's death, other family members sought to rescind the deed because of the future effective date. The Court of Appeals upheld the validity of the deed, stating:

> [i]f the deed is otherwise properly executed and acknowledged, contains words of conveyance ordinarily found in deeds, and delivered to the grantee, the fact that the deed recites that it is to take effect only upon death of grantor . . . conveys a fee title postponing possession during the life of the grantor.

*Id.* ¶ 7. The rationale for the holding was that courts must construe a deed to uphold the validity of the conveyance when possible. *Id.* ¶ 8. The same rationale applies to other documents affecting the interests in property. *See* 1 Joyce Palomar, *Patton and Palomar on Land Titles* § 202, at 476-77 (3d ed. 2003) ("If two constructions are possible, one of which would render an interest invalid, the construction that would render the interest valid is preferred." (footnote omitted)); *and* Powell, *supra*, § 81A.07[1][e], at 137 ("[W]here at all possible, a document should be interpreted so as to validate the transaction. . . . An interpretation which favors a forfeiture, when another interpretation is available, should be avoided." (footnote omitted)).

**{16}** In this case, the Extinguishment Agreement was properly executed and acknowledged, it contained words clearly extinguishing the easement burdening Tract 3, and it was delivered to the Terhunes. The fact that the agreement recited that it was to take effect upon recordation did not render the agreement invalid. The language simply postponed when the Terhunes could legally enforce the agreement. But against whom was it enforceable? If MacDuffee was the current owner of the 22-acre parcel and tried to insist on use of the easement, the answer would be simple: the Extinguishment Agreement would be binding on him. MacDuffee, however, is not the owner. MacDuffee conveyed the 22-acre parcel to Desert Sunrise, which properly recorded its deed before the Extinguishment Agreement was recorded. The Extinguishment Agreement could not be enforced against Desert Sunrise, which was a bona fide purchaser. However, the Extinguishment Agreement had been recorded for two years before Amethyst bought the 22-acre parcel from Desert Sunrise. Could the Extinguishment Agreement be enforced against Amethyst?

## B.     Amethyst was protected by the recording statutes

**{17}** The Court of Appeals correctly held that "the Extinguishment Agreement was ineffective against Amethyst, even though Amethyst's attorney came across the recorded

6

Extinguishment Agreement during the title search," because Amethyst, although on notice of the Extinguishment Agreement, was protected by Desert Sunrise's bona fide purchaser status. *Amethyst*, 2013-NMCA-059, ¶ 21. "[P]ursuant to . . . the 'shelter rule,' a purchaser with notice of an unrecorded title or claim will be protected if [his or] her vendor was an innocent purchaser. A purchaser who takes from a bona fide purchaser protected by the recording act has the same rights as [his or] her grantor." Palomar, *supra*, § 13, at 77-78 (footnotes omitted).

{18} Desert Sunrise was a bona fide purchaser: it did not have notice—either actual, constructive, or inquiry—of the existence of the Extinguishment Agreement because the Terhunes had not recorded the Extinguishment Agreement at the time Desert Sunrise purchased the 22-acre parcel. Part of the property rights Desert Sunrise acquired upon purchase of the 22-acre parcel was the right to re-sell the property. If Desert Sunrise acquired an easement across Tract 3 along with its deed to the 22-acre parcel, then Section 14-9-3 protected the right of Desert Sunrise to re-sell that easement. *See* Palomar, *supra*, § 13, at 78 (stating that the shelter rule "is necessary if the recording act is to give the [bona fide purchaser] the benefit of [his or] her bargain and permit [him or] her to market the property" (footnote omitted)). Thus, Amethyst was sheltered under the bona fide purchaser status of Desert Sunrise unless Amethyst forfeited its right to be sheltered.

### C. Amethyst forfeited its protection under the recording statutes by correcting its deeds to incorporate the Extinguishment Agreement

{19} Amethyst is a corporation that is wholly owned by Ohlsen Family Trusts and controlled by Gerald Ohlsen (Ohlsen), an attorney. After taking title to the 22-acre parcel, Ohlsen searched the public record to try to correct Amethyst's deed, which did not call out "any of the appurtenant easements that were associated with the property," including the road easements. In his search, Ohlsen discovered the Extinguishment Agreement. He prepared corrected deeds which added all of the easement information he found in his title records search. He then approached both MacDuffee and Desert Sunrise, attempting to correct the deeds along the chain of title.

{20} MacDuffee agreed to correct the deed to Desert Sunrise. On September 4, 2003, MacDuffee signed and notarized a Special Warranty Deed Corrected granting Desert Sunrise the 22-acre parcel "together with a non-exclusive easement forty (40) feet in width for utilities and right of way, as described in that certain Warranty Deed recorded in Book 377, Pages 862-864 . . . and partially vacated in Book 1895, pages 602-604" (the Extinguishment Agreement). The corrected deed stated, "[t]his deed is being recorded solely to specifically call out the appurtenant easements described above" to the original deed to Desert Sunrise. The corrected deed to Desert Sunrise was recorded on September 8, 2003.

{21} Desert Sunrise also agreed to correct the deed to Amethyst. On September 12, 2003, Desert Sunrise signed a Quit Claim Deed Corrected to Amethyst granting the 22-acre parcel along with the easement "partially vacated in Book 1895, pages 602-604" (the

Extinguishment Agreement). The corrected deed stated, "[t]his corrected quit claim deed is being recorded solely to correct the quit claim deed of record [belonging to Amethyst] . . . so as to specifically call out the appurtenant easements . . . which are the same as the appurtenant easements described in the corrected special warranty deed [from MacDuffee to Desert Sunrise]." Amethyst recorded its corrected deed on September 22, 2003.

**{22}** The final inquiry is whether Amethyst forfeited its right to the easement by correcting the deeds to incorporate the Extinguishment Agreement. We hold that it did. The Court of Appeals determined that mere reference in a deed to an extinguished property interest is not enough to revive the interest. *Amethyst*, 2013-NMCA-059, ¶ 25. However, as discussed above, the Extinguishment Agreement was not an "extinguished" property interest. It was entered into, executed, and recorded according to law, and was good as to all the world except those protected by the recording statutes. Therefore, it was a valid interest, not an extinguished interest. Even if it were an extinguished interest, "an invalid record can be made effective through correction by a subsequent record. The correction record may be . . . a second instrument executed by the same parties or by their heirs, representatives or assigns." Palomar, *supra*, § 83, at 269 (footnotes omitted).

**{23}** "[A] correction deed sets forth what had been intended in the original deed." *Gonzales v. Gonzales*, 1993-NMCA-159, ¶ 22, 116 N.M. 838, 867 P.2d 1220. "[A] deed may be corrected by a subsequent instrument . . . [w]here there is no fraud and the rights of third parties have not intervened, and equity could have reformed the deed." *Missouri Land Dev. I, LLC v. Raleigh Dev., LLC*, 407 S.W.3d 676, 687 (Mo. Ct. App. 2013) (internal quotation marks and citation omitted). Reference in a deed to a separate document incorporates that document in its entirety into the deed. *See* Restatement (Third) of Property: Wills & Donative Transfers § 3.6 (1999) (stating that a writing in existence at the time a will is drafted and identified in the will is incorporated into the will by reference if the will manifests an intent to incorporate the writing); *see also* Uniform Probate Code § 2-510 (1997) (same). The corrected deeds incorporated the Extinguishment Agreement in its entirety by referencing that agreement in the deeds. This incorporation by reference shows that the original intent of the parties was to extinguish the easement that had formerly burdened Tract 3 and benefitted the 22-acre parcel.

**{24}** Amethyst does not claim that the language of the Extinguishment Agreement was ambiguous. Instead, it claims that Ohlsen did not intend that the incorporation of the Extinguishment Agreement into Amethyst's deeds have any legal effect. Insofar as deeds are construed against the drafters, Ohlsen's claim that he did not understand the effect of the Extinguishment Agreement is without merit. We agree with the well-settled canon that "the legal effect of a deed cannot be varied simply by showing that the [drafter] misunderstood the legal effect of its terms, or intended a different effect from that which the language imports." *Johnson v. Driver*, 198 S.W.3d 359, 363 (Tex. App. 2006) (internal quotation marks and citation omitted). Extrinsic evidence of Ohlsen's intent is not relevant because we do not examine extrinsic evidence "to vary or explain the terms or contradict the legal effect of an unambiguous written instrument." *Id.* (internal quotation marks and citation omitted).

8

Instead, "parties to a real property transaction must look solely to the instrument that conveyed the property rights in order to determine their rights and responsibilities." *Home & Land Owners, Inc. v. Angel Fire Resort Operations, L.L.C.*, 2003-NMCA-070, ¶ 14, 133 N.M. 733, 69 P.3d 243; *see also Dunning v. Buending*, 2011-NMCA-010, ¶ 17, 149 N.M. 260, 247 P.3d 1145 (" '[T]he deed alone must be looked to to determine the rights of the parties.' ") (quoting *Norment v. Turley*, 1918-NMSC-109, ¶ 5, 24 N.M. 526, 174 P. 999); Powell, *supra*, § 81A.02[2], at 18-19 ("[N]o resort may be made to parol evidence to demonstrate any of [the] terms or conditions, or the intentions of the parties" to a deed. (footnote omitted)).

**{25}** Moreover, even if, as Amethyst argues, "the undisputed, objective evidence conclusively shows that neither Desert Sunrise nor Amethyst intended to release or terminate" the easement, in construing a deed, we look not to the intent of the grantee but to the intent of the grantor. *See Burnham v. City of Farmington*, 1998-NMCA-056, ¶ 10, 125 N.M. 129, 957 P.2d 1163 ("We construe a deed to give effect to the intent of the grantor."). To determine what property interests MacDuffee conveyed to Desert Sunrise in the original deed, we look to MacDuffee's intent, not Desert Sunrise's intent in accepting the deed. Amethyst offered no evidence that MacDuffee did not intend to convey the 22-acre parcel to Desert Sunrise without rights to use the historic easement across Tract 3. MacDuffee's intent must be ascertained from the four corners of the deed, as corrected. Once a deed is executed, delivered, and accepted, "all prior negotiations and agreements are deemed merged into the deed. The deed is considered to express the true and final intention of the parties." Powell, *supra*, § 81A.07[1][d], at 136 (footnote omitted).

**{26}** MacDuffee's intent to extinguish the easement burdening Tract 3 is evidenced by his notarized signature on the Special Warranty Deed Corrected, which fully incorporated by reference the Extinguishment Agreement. The Extinguishment Agreement, signed by MacDuffee before he granted the 22-acre parcel to Desert Sunrise, states clearly his intent to "extinguish an easement that burdens the Terhune Property and benefits the MacDuffee Property," and that the "[a]greement shall run with the land and shall be binding upon and inure to the benefit of the land, and any person or entity vested in title to the tracts of land described herein." The plain language of the corrected instrument could not be more clear as to the intent of the grantor. While Desert Sunrise and Amethyst may have been mistaken as to the type of property interest they were receiving, MacDuffee was not mistaken as to the type of interest he was conveying. Mutual mistake may be grounds for reformation of a deed, but unilateral mistake is not. We see no reason to depart from this well-settled principle here.

**{27}** "[A]s a general proposition, a correction deed may negate a prior conveyance." *Gonzales*, 1993-NMCA-159, ¶ 22. The final corrected deeds are what govern in this case, and they incorporate the Extinguishment Agreement. *Cf. City of Rio Rancho v. Amrep Sw., Inc.*, 2011-NMSC-037, ¶ 42, 150 N.M. 428, 260 P.3d 414 ("The final recorded plat is what governs in this case, and the recorded plat unambiguously grants a drainage easement to the City."). Because the Extinguishment Agreement unambiguously extinguishes the easement

9

burdening Tract 3, no further inquiry need be made into the subjective intent of the grantor. *Cf. id.* (holding that where language in a deed is unambiguous, subjective intent of the drafters is irrelevant).

**CONCLUSION**

**{28}**     Amethyst forfeited its right to the easement across Tract 3 when it incorporated the agreement extinguishing the easement into corrected deeds, secured the notarized signature of the original grantor, and duly recorded the corrected deeds. The corrected deeds became the definitive documents indicating the property interests conveyed by the grantor. The corrected deeds indicate the easement across Tract 3 has been extinguished, and the 22-acre parcel no longer benefits from the historic easement. We reverse the Court of Appeals and affirm the decision of the district court.

**{29}     IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Senior Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**JAMES J. WECHSLER, Judge**
 **Sitting by designation**

**Topic index for *Amethyst Land Co., Inc. v. Terhune*, Nos. 34,083**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Estoppel
Summary Judgment

**JUDGES**

Abuse of Discretion

**PROPERTY**
Bona Fide Purchaser
Easement
Purchaser
Quitclaim
Real Property, General
Recording
Right of Way
Unrecorded Deed

**REMEDIES**
Equity